No. 27,478.

GLEN A. WATKINS et al., *Appellants,* v. THOMAS CONWAY et al., *Appellees.*

(257 Pac. 937.)

SYLLABUS BY THE COURT.

LIBEL AND SLANDER—*Slander of Property or Title—Liability of Assignor of Oil and Gas Lease.* The assignment of an oil and gas lease, held on a sixty-day option prior to the expiration of that period, is not enough in itself to make the assignor liable to the landowner for the slander of title by the words and conduct of the assignees occurring after the assignment.

Appeal from Greenwood district court; GEORGE J. BENSON, judge. Opinion filed July 9, 1927. Affirmed.

*W. N. Calkins* and *Charles W. Steiger,* both of El Dorado, for the appellants.
*Gordon A. Badger* and *S. F. Wicker,* both of Eureka, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The plaintiffs brought an action to recover damages against the defendant Conway and others for slander of

Conspiracy, 12 C. J. p. 546 n. 40. Libel and Slander, 37 C. J. pp. 131 n. 76, 133 n. 13 new, 134 n. 26, 135 n. 59. Mines and Minerals, 40 C. J. p. 996 n. 63 new.

title by reason of the oil and gas lease executed by them to defendant Conway not being returned at the expiration of the sixty-day period given in the escrow instructions accompanying the lease to the bank and by reason of a display of dominion and possession of the land being maintained after said period to the detriment of the plaintiffs. The defendant Conway for answer filed a general denial and alleged assignment of the lease to the other defendants long prior to the expiration limit. Trial was had to the court and findings and conclusions were made, and judgment was rendered against two of the other defendants but in favor of defendant Conway, from which plaintiffs appeal.

Farrell, one of the defendants, interested Conway in a proposed oil well on land of the plaintiffs and that of a neighbor, making a total of 1,380 acres, and secured the assent of Conway to drill a well if leases could be procured on both tracts—the 400 acres of the plaintiffs and 980 adjoining. Farrell procured the lease from plaintiffs and had it made in the name of Conway, and plaintiffs sent the lease to the bank with instructions to deliver the lease to Conway if he commenced or caused to be commenced within sixty days from June 13, 1925, a test well on the land described, said escrow letter, written by Glen A. Watkins, one of the plaintiffs, concluding as follows: "Should he fail to comply with said instructions, then this agreement will be considered null and void and said papers will be returned to me." Farrell very soon thereafter failed to procure a lease on the adjoining land and so reported to Conway, who, on July 10, 1925, called the whole matter off as far as he was concerned and assigned the lease to Farrell, who had procured it. Farrell later assigned an interest in it to Byers. Farrell, Byers and the bank were made defendant, as well as Conway. Judgment was rendered against Farrell and Byers and in favor of Conway and the bank. The evidence shows that Conway told the bank that the lease might be returned as far as he was concerned; he had no interest in it. The trial court found that Farrell was the agent of Conway to secure the lease, but the relation of principal and agent ceased July 10 when Conway assigned the lease to Farrell. On August 12, the last day of the sixty days given to commence or cause to be commenced a test well on the premises, Farrell and Byers hauled a load of lumber to the grounds for the purpose of erecting a rig. A few days later more lumber was hauled and the rig was constructed. No machinery or other well equipment was delivered on the ground,

but Farrell and Byers strenuously opposed the bank returning the lease to plaintiffs. There was an oil excitement on in that vicinity about that time and this land could easily have been rented for $10 per acre. The slander of title complained of by the plaintiffs consists of two items: First, the failure to return the lease at the end of the sixty-day period named in the escrow letter of instructions; and second, the damage and loss sustained by the adverse dominion and possession of the land which hindered and prevented plaintiffs from leasing it to others at a substantial price and the continued assertion of such possession until the interest in leases abated and there was no more such opportunity to lease it.

In the first place, Conway was not instructed by the escrow letter to return the papers. It was the bank that was so instructed. But he is charged with this responsibility, because by his assignment of the lease he made it possible for others to demand of the bank that the papers be not returned. We are not advised as to the terms of the lease, but it is to be presumed without evidence to the contrary that it was capable of being assigned. When Conway assigned it to Farrell only twenty-seven of the sixty days had expired. There were thirty-three days left for him to get another who might drill the test well. He did find Byers, who undertook to do so. It was said a party to a contract cannot relieve himself of the obligations placed upon him in the contract by assigning it. Perhaps not, but what were the obligations of Conway in this connection? He certainly was not obligated to drill the well. The full extent of his obligation was to commence the drilling within sixty days or lose his rights under the lease. If no assignment had been made and no effort made by Conway toward drilling a well, what could plaintiffs have done by way of enforcing the contract? Simply have it declared canceled as the escrow letter provided. The authorities cited in support of this contention apply where there is an obligation or promise of some kind made by the defendant. If one rents a house for his own use for a year at a stipulated rental, payable monthly, and after a few months assigns the lease to another, who fails to pay the rent, there is no doubt that the original tenant can be required to make good his promise. But here the lessee simply has an option to commence within sixty days or lose his lease. True, if he decides to commence, then he has an obligation to perform—to work in a certain way, to use certain material, go to a certain depth, etc.

It is urged by the appellee that an option is not a binding or enforceable contract. If it is not, the plaintiffs have nothing here on which to stand. To hold such, we fear, would deprive oil districts of a large volume of speculative business. The escrow letter does not name a specific consideration, and we do not have a copy of the lease itself, but it is fair to presume there was a consideration for the option.

We can see nothing wrong in the lessee assigning his lease, which, under the instructions, gave the assignee thirty-three days to commence the drilling of a well. The trouble and loss of which the plaintiffs in this case complain arose out of the conduct of the assignees, beginning more than thirty days after Conway ceased to have any connection with the transaction. Farrell and Byers demanded of the bank that it hold and not return the lease to plaintiffs, and asserted a dominion over the land, claiming to be entitled to hold it after the sixty days had expired without their having in good faith commenced the drilling of a well as the trial court found. This is a species of tort. The evidence shows no connection of Conway with any of it, and the findings exempt him from any part in it. The only claim of connection is that by making the assignment he made it possible for these assignees to commit the tort to the great detriment of the plaintiffs. We have not found any authorities which go that far. Even if Conway had been interested with the other defendants after July 10 in a common purpose, if he said or did nothing to injure the plaintiffs' title he could not be held responsible for the tortious and wrongful acts of the other defendants.

"Where two or more are acting lawfully together in the furtherance of a common lawful purpose, one is not liable for the unlawful act of another, done in furtherance of the common purposes, without his concurrence." (26 R. C. L. 767.)

He must do something or consent to the doing of something which is wrong in order to be held liable. There should be some connection of Conway with the tortious acts of the other defendants before they can be ascribed to him so as to make him liable. The motive which is usually observable in such cases is entirely lacking here as far as he is concerned. What benefit or advantage could it have been to him to have these defendants retain the lease and exert a dominion over plaintiffs' land after the escrow period had ended? We can see nothing which would justify us in holding him liable for

the wrongful acts of his codefendant after extricating himself from the transaction on July 10.

Slander of title implies malice. Nothing of this kind appears in the evidence on the part of Conway. Of course, it can be imputed and implied from the surrounding facts and circumstances, but there must be malice in order to complete a cause of action in the form of slander of title.

"Malice, that is, absence of good faith, is an essential condition of liability. . . . It is essential, also, that it should be malicious—not malicious in the worst sense, but with intent to injure the plaintiff." (3 Bouvier's Law Dictionary, 3081.)

"To support an action for slander of title special damages must be alleged, and that, too, circumstantially. Such an action cannot be maintained without showing malice and want of probable cause." (*Stark v. Chitwood*, 5 Kan. 141, syl. ¶¶ 1, 2; see, also, *Bourn v. State Bank*, 116 Kan. 231, 226 Pac. 769.)

We think the findings in favor of Conway are sustained by the evidence and see no error in the conclusion reached in his favor.

The decision we have reached makes it unnecessary to consider the cross appeal or the errors complained of by the appellee.

The judgment is affirmed.