No. 30,234.

H. L. Dwelle, *Appellee,* v. The Home Realty and Investment Company et al., *Appellants.*

(7 P. 2d 522.)

Opinion filed
January 30, 1932.

*W. C. Harris* and *W. L. Harris,* both of Emporia, for the appellants.

*Roscoe W. Graves,* of Emporia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for slander of title to certain town lots in Emporia and to quiet plaintiff's title thereto.

Plaintiff's title was founded on a deed of general warranty which purported to have been executed under the seal of the Home Realty and Investment Company. After the action was begun it was discovered that the charter of the corporation had been forfeited, so the members of its last board of directors were substituted as defendants.

The gist of this action was the recording of an affidavit in the office of the register of deeds which denounced plaintiff's title as fraudulent and not based on a *bona fide* conveyance of the defendant corporation. The affidavit was sworn to by Edgar M. Forde, secretary of the corporation, and filed for record by him. The pleadings and evidence developed the facts leading up to this action about as follows:

Sometime in 1927 one Ann M. Forde, president of the defendant corporation, called upon plaintiff, who conducted a real-estate business in Emporia, and listed for sale certain properties, including lots 1 and 3 in University Place addition to that city. Later Mrs. Forde called to inquire if plaintiff had negotiated any sales. He replied in the negative, whereupon Mrs. Forde offered to sell to him the two lots above mentioned for $1,500. Plaintiff accepted, and Mrs. Forde delivered to him a deed of general warranty bearing date of December 15, 1927, executed by the Home Realty and Investment Company by A. M. Forde, president, and attested by E. M. Forde, secretary. The instrument bore what purported to be the seal of the corporation, and a notarial acknowledgment dated February 25, 1928. This deed was filed for record on February 28, 1928.

On May 4, 1928, Edgar M. Forde, otherwise appearing herein as E. M. Forde, who prior to the dissolution of the corporation had been its secretary, made an affidavit before a notary public in Bay county, Michigan, in which he averred that the two town lots in controversy were the property of the defunct corporation; that it had not made a conveyance of them; that no deed had been delivered by the corporation to plaintiff or to anybody else whereby this property had been conveyed; that the deed under which plaintiff claimed was not the deed of the corporation; that the deed did not contain the corporate seal; that the corporation had received no consideration for the deed or for the property it purported to convey; that plaintiff was not an innocent purchaser, and that the deed had been made and filed for record to divest the corporation without its knowledge and consent. This affidavit was recorded on May 7, 1928.

On March 20, 1929, plaintiff sold and conveyed one of the town lots to Frank Conway, and agreed to furnish an abstract showing merchantable title. When the abstract was brought down to date it showed the affidavit of E. M. Forde, which caused Conway to rescind his contract of purchase. Meantime, however, Conway had been advanced $300 on a loan of $4,000 he had negotiated and which was to be secured by a mortgage on the lot, and he had begun to improve the property by digging a cellar and erecting the foundation for a house. Plaintiff was compelled to accept from Conway a reconveyance of the property, and repay the $300 advanced by the mortgage company and pay $165 for the work and materials Conway had expended. For these expenditures and for loss by depreciation in property values and the frustration of his sale to Conway, plaintiff brought this action, setting out at length all the pertinent facts.

Defendants' answer admitted the execution and recording of the affidavit, denied plaintiff's ownership of the property, denied that the corporation had ever sold, conveyed, executed or delivered a deed to the property. They further alleged that the deed under which plaintiff claimed title was a forgery, and that such fact was well known to plaintiff at the time he received it and placed it of record. They alleged that in December, 1927, Edgar M. Forde, secretary of the company, had partially prepared the deed and had sent it to A. M. Forde, president of the corporation, for her signature, that the name of the grantee was then in blank, that the common seal of the

company had not then been impressed on the deed; and that A. M. Forde was not authorized to deliver the deed and that she, without the knowledge, consent or authority of the company but with intent to injure and defraud it, entered into negotiations with plaintiff and another person to sell and convey the property to plaintiff. Defendants also alleged that A. M. Forde wrongfully inserted plaintiff's name as grantee without authority, and that she had procured a false and counterfeit seal to be affixed to the deed, and that all these matters were well known and consented to by plaintiff. Defendants also alleged that, before making and filing the affidavit, E. M. Forde consulted an attorney and disclosed to him all the facts and was advised that to file such affidavit was quite the proper thing to do. Defendants appended a cross petition to their answer in which they adopted all its allegations, averments and denials, and prayed that their title be quieted, and for other equitable relief.

Plaintiff's reply traversed the allegations of the answer and cross petition, and alleged that he had no knowledge of any such fraud on the part of A. M. Forde, president of the corporation, as alleged by defendants, and that he had paid her $1,500 in good faith for the property.

The cause was tried before a jury, which returned an itemized verdict in favor of plaintiff as follows:

"On 4th cause of action in the sum of.............................. $200
On 5th cause of action in the sum of, attorney's fees.................. 150
    Other expenses .................................................. 10
On 6th cause of action in the sum of.............................. 10"

The jury also answered certain special questions which the trial court approved. Some of these read:

"1. Did E. M. Forde consult and advise with an attorney regarding the making and filing of the affidavit in question and placing the same of record before the same was executed and filed for record? A. Yes.

"4. Did said E. M. Forde make and file said affidavit in pursuance of the advice given by said attorney? A. Yes.

"5. Did E. M. Forde at the time of the making and filing of said affidavit in good faith believe that the defendant had an interest in the property in question to protect therein? A. No.

"6. Did E. M. Forde act maliciously and in bad faith in making and filing said affidavit? A. Yes.

"7. If you answer the foregoing question 'yes,' state the acts performed indicating malice. A. By placing affidavit on record knowing that the president of the Home Realty and Investment Company had sold said lot to plaintiff.

"8. Does the deed to plaintiff which has been introduced in evidence in this case bear the common seal of the Home Realty and Investment Company? A. Yes.

"9. Did plaintiff, Harry Dwelle, know at the time he purchased the property in question from the Home Realty and Investment Company that its president, Anne Forde, intended to defraud said corporation through the sale of said property to him? A. No."

The court struck out the second item, $10, allowed by the jury on the fifth cause of action, and gave judgment for plaintiff in the aggregate net sum, $360.

Defendants appeal, urging various errors, the first of which pertains to the overruling of their objection to the introduction of evidence. This point is based on the fact, as revealed by plaintiff's petition, that the affidavit was filed and recorded on May 28, 1928, while plaintiff did not contract to sell the lot to Conway until June 8, 1929, and that the affidavit on file gave plaintiff constructive notice of the claim of the defendant corporation. Newell on Slander and Libel and other authorities are cited to the effect that to maintain an action for slander of title the aggrieved party must show that the slanderous words were uttered while negotiations for a sale of the property were pending and that such negotiations were thereby broken off by reason of such wrongful conduct. This rule of law may be sound and just where applicable. It does not apply here. The recording of this affidavit was not constructive notice to plaintiff of defendants' claim to the property. Once a man buys a town lot and puts his deed on record the law does not charge him, under risk of prejudicing his right thereto, to be on the *qui vive* to see that his grantor does not slip something on the record which impeaches or beclouds the title he has thus acquired. While the statute, R. S. 67-222, provides that when a lawful instrument affecting the title to property is filed for record it gives constructive notice to everybody concerned, and particularly to subsequent purchasers and mortgagees, it is not constructive notice to one whose interest was acquired prior to its filing.

In *Lewis v. Barnhardt*, 43 Fed. 854, defendant claimed under a contract of purchase from one Jane Lewis, who based her title on a tax deed which apparently had become absolute. Later a will was recorded in which the fee title holder, deceased husband of Jane, had devised a life estate to her and remainder in tail to her children. It was held that the recording of the will which thus affected his vendor's title was not constructive notice to defendant whose title related back to the execution of his contract of purchase.

In *Lowden v. Wilson*, 233 Ill. 340, it was held:

"The purpose of the recording laws is to charge subsequent purchasers with notice and protect them against prior unrecorded conveyances, and the recording of a deed has no effect to charge with notice a prior purchaser who has recorded his conveyance." (Syl. ¶ 1.)

In *White v. McGregor*, 92 Tex. 556, the effect of registration of instruments affecting title was discussed, and it was held that the registration of a sheriff's deed to property is not notice to a subsequent purchaser *who acquired title* under a conveyance *from the fee holder prior* to the sheriff's sale. In the opinion there is an instructive and pertinent excerpt from *Jackson v. Post*, 15 Wend. (N. Y.) 588, which is worth repeating here:

" 'The object of all the registry acts, however expressed, is the same. They were intended to affect with notice such persons only as have reason to apprehend some transfer or encumbrance prior to their own, because none arising afterwards can, in its own nature, affect them. And after they have once, on a search instituted upon this principle, secured themselves against the imputation of notice, it follows that everyone coming into their place, by title derived from them, may insist on the same principle in respect to himself. It is a general rule that when once a man has granted away his right, anything which he can do or say shall never be received to affect another claiming under him.' " (p. 558.)

The pertinent annotation to this case in 71 A. S. R. 880 reads:

"The registration of a conveyance or encumbrance is constructive notice only to subsequent purchasers and encumbrancers; *Woodward v. Brown,* 119 Cal. 283, 63 Am. St. Rep. 108. The record of a deed is notice only to those who are bound to search for it, including parties subsequently dealing with the land or concerned with its title, but antecedent rights are not generally affected by registration, and the record is not notice to the grantor in the deed: *Davis v. Monroe,* 187 Pa. St. 212, 67 Am. St. Rep. 581; *Corey v. Smalley,* 106 Mich. 257, 58 Am. St. Rep. 474."

In 39 Cyc. 1721 it is said:

"It is sometimes said that the record of a conveyance which is entitled to be recorded is constructive notice to all the world. But this is too broad and unqualified an enunciation of the doctrine. It is constructive notice only to those who are bound to search for it; subsequent purchasers claiming under the same grantor, or through one who is the common source of title. It affords no notice whatever to a prior purchaser from the grantor, and accordingly an instrument placed on record after one has acquired property cannot affect his rights."

We hold that if the allegations of the affidavit were false, plaintiff's title was not only slandered when the affidavit was recorded

(*Printing Co. v. Nethersole*, 84 Ohio St. 118), but that the slander continued without cessation to speak as long as it remained on the record and until the judgment. It was still speaking when plaintiff entered into a contract to sell the property to Conwell, and it frustrated that sale.

Defendants' second contention is that their demurrer to plaintiff's evidence should have been sustained. As we read the record that point is scarcely worthy of notice. Plaintiff's evidence fairly covered all the material allegations of his petition. It would have been highly improper for the court to do otherwise than leave it to the jury to determine the credence to be attached to that evidence. It is useless for counsel to recapitulate to this court, as they may properly do to a jury, whatever weaknesses may have inhered in plaintiff's evidence or in his own testimony. No doubt it was a good talking point before the jury to rehearse the testimony which tended to show that plaintiff's deed had no seal on it when it was partially prepared by the secretary of the corporation, likewise the testimony that an attorney advised the president of the company that the want of a seal could be easily supplied by a Topeka business firm which made seals, and that the seal impressed on the deed was procured in accordance with that suggestion. These are matters with which this court has nothing to do, since the jury apparently gave them no credence. It is suggested that a defamation in writing is not presumed to be malicious and that the burden must be borne of proving malice by the party who charges it. We think plaintiff's evidence did sustain that burden, but we cannot concede that when an affidavit is placed on record in disparagement of title to property, when such title is otherwise fair on its face, that the burden is on the title holder to establish his title and to establish the falsity of the affidavit. In law, equity and good conscience there can be no defense to such conduct except proof of the material facts set out in the recorded affidavit, and the burden of making such proof rests on defendant. While malice is not presumed in an action for slander of title (*Watkins v. Conway*, 124 Kan. 79, 83, 257 Pac. 937), it may be established from all the evidence adduced, as was done to the jury's satisfaction in the case at bar.

It is also contended that the plaintiff's deed was erroneously admitted in evidence, on the theory that no foundation had been laid for its admission. Let us see about this. The deed was delivered to plaintiff by the president of the corporation. She was a proper offi-

cer to have its custody and to deliver it. (R. S. 17-620.) It bore the signatures of the president and the secretary of the corporation. It was acknowledged before a notary. It contained the name of plaintiff as grantee when he first saw it. It bore what purported to be the seal of the corporation. Plaintiff paid to the president of the corporation the purchase price. He testified that he had neither knowledge nor notice that anything was irregular in the transaction. Since the jury manifestly believed him, we think there was ample foundation for the admission of the deed in evidence and to cast the burden on defendants of proving whatever irregularities they claim to have inhered in it. In *Crossman et al. v. Hilltown Turnpike Co.*, 3 Grant Cas. (Pa.) 225, 226, the action was upon covenant against a corporation where the authenticity of the corporation's seal upon an instrument was drawn in question. The court said:

"If an instrument on which a corporation is sought to be charged purports to be sealed and there be any evidence that the seal is that of a corporate body, it must be submitted to the jury. Whether it be sealed or not is for the court; but whether the seal affixed be the defendants' seal, a jury only can determine."

In another Pennsylvania case, *President et al. v. Myers*, 6 S. & R. 12, the action was upon a written agreement which defendant sought to defeat on various grounds, one being that the instrument was not duly executed. The court said:

"It is necessary to premise that there is a striking difference between proof of authenticity, collateral to the issue, and offered for the purpose of introducing the deed itself, and the same proof, *where the issue is directly on the fact of sealing and delivering*. In the first case, the court is the appropriate tribunal to decide the preliminary questions of fact; although where the evidence is not clear, it may, and usually does, refer the consideration of those questions to the jury, with a direction not to consider the deed or paper as being in evidence if the facts should appear to be unsupported by due proof; but where the execution of the paper is the fact directly in issue, the jury, and not the court, is to judge of the proof, which, instead of being preliminary to the admission of other evidence to prove the issue, goes itself directly to the jury as evidence in chief of the very fact in controversy. On the plea of *non est factum*, therefore, wherever there is a spark of evidence of sealing and delivering, the courts are bound to permit the instrument to be read; for it is not for them, but the jury, to judge of the fact." (p. 15.)

The next error urged relates to the instructions. The trial court instructed the jury that plaintiff had the burden to show malice, and that the burden was on defendants to show that E. M. Forde, who made and filed the affidavit, "honestly believed that defendants

had a claim on the real estate." There is nothing in such instructions of which defendants can justly complain. Fault is found with instruction No. 18, but we see nothing wrong with it, nor would we be justified in taking space to reproduce it. As we have already seen, the slander was a continuing one and necessarily was being made at the time of the negotiations between plaintiff and Conway, and it caused their defeat, according to the general and special verdicts of the jury. Other criticisms of the instructions have not been overlooked; but when read and construed together, as they should be, they fairly stated the pertinent law relating to the issues which the jury had to determine.

Defendants' fourth specification of error, which the trial court refused to give, was predicated on the erroneous theory that the slanderous words in the affidavit had spent their force the moment the affidavit was filed, and long before plaintiff bargained to sell the town lot to Conway. That theory is altogether fallacious and needs no further discussion.

The fifth specification of error relates to the admission in evidence of the corporation's deed to plaintiff. That point is already disposed of.

The sixth error assigned relates to the overruling of defendants' motion for judgment *non obstante* because of the special findings that E. M. Forde consulted an attorney before filing the affidavit and did so on his advice. That fact might be worth something in the jury's consideration of the question of E. M. Forde's good faith in recording the affidavit. It afforded defendants no exculpation as a matter of law.

The seventh error specified relates to the overruling of defendants' motion to set aside findings Nos. 5, 6 and 7 as being without support in the evidence, and No. 8 as contrary to the evidence. We think the circumstances, as well as the course of conduct pursued by E. M. Forde, support findings 5, 6 and 7. There is no suggestion in this record that President A. M. Forde was ever called to account by her associates in the defunct corporation for the sale and conveyance of the town lots to plaintiff. So far as is now apparent, E. M. Forde contented himself with filing the affidavit which cast aspersions on plaintiff's title, leaving matters in that situation for plaintiff to discover a year later when his transaction with Conway necessitated an examination of the record. Touching the answer to No. 8, defendants assume that what their witnesses testified to must

be taken as true, an assumption which is altogether incorrect. Sometimes the attendant circumstances tend to discredit the positive testimony of witnesses. (*Fenn v. Kansas Gas & Electric Co.*, 118 Kan. 131, 234 Pac. 77; *Citizens Finance Co. v. Seamans*, 129 Kan. 743, 284 Pac. 422; *Young v. Lucas*, 132 Kan. 484, 296 Pac. 362.)

It is finally urged that the judgment was rendered in violation of the rules of practice promulgated by this court, particularly Nos. 30 and 32, in that the journal entry was not submitted to counsel for defendants for their approval, and that such judgment was rendered without defendants' counsel being notified as to when it would be announced. These rules are designed to facilitate the orderly and expeditious administration of justice. However, a judgment cannot be disturbed for a mere breach of procedural rules unless the complaining party has been aggrieved thereby. This departure from the rules was urged in the trial court and what seems a sufficient answer was there made. The record reads:

BY THE COURT: "You had a good many chances to take this matter up, I take it, if you had this in mind the day you were down here and before the journal entry was filed in the clerk's office. You did not say at that time you thought you should have been present at the time the journal entry was drawn or signed. I took this matter up as I often do, and I think you did likewise, after the regular office hours here, went over the briefs again the best I knew how—and I thought this matter out—went over the pleadings and it was at this time that I wrote you the letter. No mention was made of it at the time you came down here, when you asked me when it was to be filed and if I was going to make that kind of a decision."

Counsel do not even now suggest that the judgment differs in form or substance from what it would have been if a tentative draft of it had been submitted to them before it was given the court's approval.

Other arguments of defendants' counsel, including those in their reply brief, have been studied with painstaking care, but they do not disclose reversible error in the judgment nor warrant further discussion.

The judgment is affirmed.