24CA0197 Marriage of Johnson 06-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0197
El Paso County District Court No. 00DR4379
Honorable Erin Sokol, Judge

---

In re the Marriage of

Sherry Xan Johnson,

Appellee and Cross-Appellant,

and

Gregory R. Johnson,

Appellant and Cross-Appellee.

---

JUDGMENT AFFIRMED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BERNARD*
Kuhn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

---

Law Office of Joel M. Pratt, Joel M. Pratt, Colorado Springs, Colorado, for Appellee and Cross-Appellant

Márquez Law, Jason A. Márquez, Denver, Colorado, for Appellant and Cross-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1   Husband, Gregory R. Johnson, appeals the district court's judgment denying his motion to convert a decree of legal separation from his wife, Sherry X. Johnson, into a decree of dissolution of marriage.  Wife cross-appeals the court's order denying her request for attorney fees under section 13-17-102, C.R.S. 2024.  We affirm the judgment, we reverse the attorney fees order, and we remand this case to the district court for the sole purpose of deciding whether to award wife attorney fees under section 13-17-102, including her request for appellate attorney fees.

## I.   Background

### A.   The Proceedings Between 2000 and 2009

¶ 2   Husband and wife married in 1993 and had two children, a daughter in 1996 and a son in 1998.  They separated in 1999, and they filed a petition for a legal separation in 2000.  In 2001, the parties filed a separation agreement that addressed a parenting plan, child support, spousal maintenance, and the division of marital property and debt.  The judge who was presiding over the case issued a decree of legal separation.

¶ 3   While the decree of separation was in effect, husband and wife attended marriage counseling, and their relationship improved.

Husband moved back in with wife some time in 2003 or 2004. During the time that he lived in the home, husband contributed his income to the family's expenses, but he stopped paying wife child support. They filed their taxes jointly as married, and wife was a stay-at-home mother.

¶ 4     Their marital relationship foundered in October 2008, when husband moved out of the house. He filed three motions: to modify child support; to appoint a child and family investigator; and to convert the legal separation decree to a dissolution of marriage decree. The judge ordered the appointment of a child and family investigator, but he did not address the other motions.

¶ 5     Husband and wife went to marriage counseling again, and their relationship improved. Husband's attorney filed a status report in April 2009 indicating that the parties were coordinating with the child and family investigator and that they had agreed to be bound by her recommendations.

¶ 6     As a result of the improvement of the parties' marital relationship, husband's attorney filed a document entitled "Motion to Dismiss" in May 2009. Among other things, it stated:

> [Husband] filed his [m]otion to [c]onvert [d]ecree of [l]egal [s]eparation to [d]ecree of [d]issolution of [m]arriage on October 20, 2008.
>
> Since the filing of said [m]otion, the parties have been attending marriage counseling and have reconciled.
>
> For the reasons set forth above, the parties believe it is in their best interest and the best interest of the minor children that their action be dismissed.
>
> Wherefore, [husband] respectfully requests the relief set forth above, and for such other and further relief as this [c]ourt deems just and proper in the premises.

¶ 7 Weeks later, Judge Kane, a district court judge, granted the motion, signing the following order that husband had submitted along with the motion to dismiss:

> THIS MATTER, having come before the [c]ourt on [husband's] [m]otion to [d]ismiss, and the [c]ourt having reviewed the same, and the [c]ourt file, and being otherwise advised in the premises, DOES HEREBY FIND and ORDER as follows: [Husband's] [m]otion to [d]ismiss is hereby granted.

¶ 8 Husband did not challenge this order for thirteen years.

### B. The Proceedings from 2022 to the Present

¶ 9 Husband filed a petition of dissolution of marriage in the same judicial district in December 2022. (Husband states that he did not

3

want to file a new petition, but the court's clerks could not find this case, which was the original one.)

¶ 10     This case turned up in February 2023, and husband filed, for a second time, a motion to convert the separation decree to a dissolution decree. Wife objected.

¶ 11     After reviewing this motion, the court — with a new judge presiding over the case — decided that husband's 2009 motion to dismiss applied to all of this case, that Judge Kane had dismissed all of it, and that husband was therefore barred from proceeding with it.

¶ 12     Husband filed a motion asking for post-trial relief under C.R.C.P. 59 and 60. The court set aside its order barring husband from proceeding with this case and set a hearing.

¶ 13     At the hearing, husband, wife, and their son testified. The court found that the testimony of wife and the son was credible but that husband's testimony was often not credible. The court issued a written ruling on December 17, 2023. That order focused on three things.

¶ 14     First, the court concluded that the "plain language" of husband's motion to dismiss, which was filed on behalf of "both

4

parties," stated that dismissing the case was "in the parties' and the children's best interests" and that "the parties had reconciled and attended marriage counseling." The court added that "[w]ife testified credibly (while [h]usband's testimony was incredible) . . . [and] that the parties understood that the entire case was to be dismissed." After the case was dismissed in 2009, "[h]usband behaved entirely as one would if one had dismissed their action in its entirety." The court concluded that (1) the motion to dismiss was a written agreement to "modify/extinguish" the separation agreement; (2) Judge Kane "nullified" the separation agreement when he granted the motion; and therefore, (3) the separation decree was "vacated," and "the case was dismissed in its entirety."

¶ 15    Second, the court concluded that the parties "did not follow the material terms" of the separation agreement "from 2003 to present." According to the court, case law indicated that parties could abrogate a separation agreement "by failing or choosing not to follow the terms of the agreement." The court decided that the parties in this case did just that.

¶ 16    Third, the court concluded that the doctrine of judicial estoppel applied. In reaching this conclusion, the court determined

5

that (1) husband had taken two different positions in the same proceeding, one in 2009 and one in 2023; (2) Judge Kane had dismissed the entire case in 2009 at husband's request; and (3) husband attempted to mislead the court in 2023 about what had happened between 2009 and 2022.

¶ 17 Two days after the court issued the 2023 order, wife filed an amended affidavit asking for attorney fees. The court denied that request, and wife appeals that decision.

## II. Husband's Contentions

¶ 18 Husband offers four reasons why we should reverse the 2023 dismissal order. He contends that the court erred when it

(1) did not enforce the separation decree because the separation agreement required "a stipulation signed by both parties to modify" the agreement or set it aside;

(2) decided that Judge Kane's 2009 order granting husband's motion to dismiss had dismissed "the entire case";

(3) denied husband's motion to convert the separation decree to a dissolution decree; and

(4) decided that husband's motion to convert the separation decree to a dissolution decree was "precluded by judicial estoppel."

¶ 19　As we read the record and husband's opening brief, it appears that the first two of these contentions are analytically intertwined. We therefore resolve them together. In doing so, we conclude that the court did not err when it decided that Judge Kane had dismissed the entire case in 2009, including the separation decree and the separation agreement. This conclusion means the separation agreement and the separation decree no longer exist.

¶ 20　We therefore do not need to address husband's third and fourth contentions because (1) there was no separation decree to convert into a dissolution decree in 2023, and (2) resolving the judicial estoppel contention would add nothing to or detract anything from the conclusions that we reach concerning the first two contentions.

　　　A.　Standard of Review and General Legal Principles

¶ 21　When we interpret a trial court's order and any writing, such as husband's 2009 motion to dismiss, we do so de novo, applying principles of contract interpretation. *See Blecker v. Kofoed*, 672

P.2d 526, 528 (Colo. 1983).  Our primary goal is to determine the intent of the drafter of a motion and of the court that granted the order.  *See Sch. Dist. No. 1 v. Denver Classroom Tchrs. Ass'n*, 2019 CO 5, ¶ 12.

¶ 22    We determine intent primarily from the document's language.  *Id.*  We focus on the words used in the motion and in the order.  *See Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993).  We construe them "in harmony with th[eir] plain and generally accepted meaning . . . and by reference to" all the document's provisions and the nature of the case that "forms its subject matter."  *Id.* (citation omitted).  We may consult recognized dictionaries to give words their "plain and ordinary meaning[s]."  *Renfandt v. N.Y. Life Ins. Co.*, 2018 CO 49, ¶ 18.

¶ 23    If, after construing the language of a motion and the order granting it, we decide that the motion and the order are not ambiguous, then we will enforce them as written.  *See Sch. Dist. No. 1*, ¶ 13.  But, if they are "fairly susceptible to more than one interpretation," they are ambiguous, and their meaning is "generally an issue of fact to be determined in the same manner as other

8

disputed factual issues." *Id.* (quoting *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996)).

B.    Analysis

¶ 24    Looking at the plain language of the 2009 motion to dismiss and of the order granting it, we conclude, for the following reasons, that these two documents are not ambiguous and that the record supports the court's decision to enforce them as written. *See id.*

¶ 25    The words that the 2009 motion to dismiss and the order granting it used are categorical.

¶ 26    The word "dismiss" means, "to terminate (an action or claim) without further hearing." Black's Law Dictionary 589 (12th ed. 2024).

¶ 27    An "action" is a "civil or criminal judicial proceeding"; an "'[a]ction' in the sense of a judicial proceeding includes . . . any other proceeding in which rights are determined." *Id.* at 36. "An 'action' refers to the whole of the lawsuit." *Brownback v. King*, 592 U.S. 209, 220 (2021)(Sotomayor, J., concurring). The concept that an "action" means the entire case is supported by the Colorado Rules of Civil Procedure. *See, e.g.*, C.R.C.P. 2 ("There shall be one form of action to be known as 'civil action.'"); C.R.C.P. 3(a)("A civil

9

action is commenced . . . by filing a complaint with the court . . . ."); C.R.C.P. 41 (entitled "Dismissal of Actions"); *see also Chirinos-Raudales v. People*, 2023 CO 33, ¶ 19 (applying the definition of "action" found in Black's Law Dictionary).

¶ 28　　The 2009 motion to dismiss and the court's order granting it are clear. Putting the words "dismiss" and "action" together, the motion to dismiss asked the court to terminate the judicial proceeding, the whole of the lawsuit. The order granted that request.

¶ 29　　Husband submits that "action," a word that his motion to dismiss used, only meant that he was asking the court to dismiss the three motions that he had previously filed and that were pending. He adds that neither the parties nor the judges dealing with the case in 2009 referred to it as an "action"; rather, they used words such as "case" and "matter."

¶ 30　　But husband's submission is a red herring. As we have demonstrated, the word "action" is broad and all-encompassing when it comes to the entirety of a case. And it appears in context with language that supports such a broad definition. For example, the motion stated that the parties had "attend[ed] marriage

counseling and ha[d] reconciled." It was, therefore, in their best interests, and in the best interests of their children, that "their action be dismissed." In other words, the benefits of the parties' reconciliation provided a reason to end the whole lawsuit. If husband had merely wanted the court to defer a court decision on the three motions that he had filed in 2009, he could have said so.

¶ 31 Next, husband asserts that, to dismiss the entire case, C.R.C.P. 41 required him and wife to file a signed stipulation. But C.R.C.P. 41(a)(1), which addresses voluntary dismissals, simply states that such stipulations are one way, among several, to dismiss a case. It also makes clear that such dismissals are "without order of court." *Id.*

¶ 32 It appears to us that, contrary to husband's assertion, the 2009 dismissal order occurred under C.R.C.P. 41(a)(2). This subsection of the Rule reads that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."

¶ 33 Relatedly, husband contends that the 2009 dismissal order could not dismiss the separation decree or the separation agreement because the decree did not provide for such a possibility.

Husband points to the separation agreement, which states that it is not "modifiable except by its own terms, or by operation of law, or by written [a]greement of the parties with approval of the [c]ourt." He adds that none of those things happened.

¶ 34    But at least one of them did.

¶ 35    The court determined that the 2009 motion to dismiss *was* a written agreement of the parties that was approved by a judge. The language of the motion supports that interpretation. For example, it states that "the *parties* believe it is in their best interest and the best interest of the minor children that their action be dismissed." (Emphasis added.) And, while neither husband nor wife signed the motion, it was signed and filed by husband's attorney on husband's behalf, thus announcing husband's desire to dismiss the case.

¶ 36    Husband adds that "the dismissal could not be granted under C.R.C.P. 41(a)(2)" because Judge Kane could not "set aside" the separation agreement or the separation decree "without determining that such terms and conditions were proper *at that time*." But Judge Kane made such a determination. The motion to dismiss informed him that the parties had reconciled and that "the parties believe[d] it [wa]s in their best interest and the best interest of the

12

minor children that their action be dismissed." The motion therefore indicated that the parties thought, when the motion was filed, that the separation agreement and the separation decree should no longer apply to their relationship.

¶ 37     In his answer-reply brief, husband contends, for the first time, that, once the separation decree was entered as a "final judgment" in 2001, "the entire case could not be dismissed" and that Judge Kane could not "set aside [the] decree." He adds that the separation decree was a "final judgment" because "[n]either party appealed" it. We do not consider contentions raised for the first time in a reply brief. *Meadow Homes Dev. Corp. v. Bowens*, 211 P.3d 743, 748 (Colo. App. 2009).

¶ 38     Even if we assume, for purposes of discussion, that the 2009 motion to dismiss and the order dismissing it are ambiguous on the issue of whether the order dismissed the separation agreement and the separation decree, we conclude that the record supports the court's determination that the parties' conduct abrogated the agreement and the decree.

¶ 39     "The rule is that, upon reconciliation, agreements pertaining to separation and support are abrogated, provided the reconciliation is

13

intended to be permanent," with the general exception that "reconciliation does not automatically terminate property settlement agreements." *Larson v. Goodman*, 475 P.2d 712, 713 (Colo. App. 1970). "The logic of this concept is compelling." *Weiner v. Weiner*, 293 A.2d 229, 231 (N.J. Super Ct. Ch. Div. 1972), *aff'd*, 313 A.2d 222 (N.J. Super Ct. App. Div. 1974). "Public policy favors preservation of the marriage. Terminating future obligations under a separation agreement upon reconciliation helps to restore the previous relationship of the parties . . . ." *Id.* "Thus, normal cohabitation, as a matter of public policy[,] will terminate any future obligation contained in a separation agreement." *Id.*

¶ 40    "The question of whether or not reconciliation affects a property settlement agreement is a question of fact to be determined by the evidence." *Larson*, 475 P.2d at 713.

¶ 41    After reviewing the evidence, the court decided that, once Judge Kane granted the 2009 motion to dismiss, husband's and wife's conduct showed that they had reconciled and that they had abandoned the separation agreement and the separation decree. In reaching that decision, the court repeatedly found that wife was credible and that husband was not credible.

¶ 42    The court pointed to a variety of factors occurring over the thirteen years between 2009 and 2022 indicating that husband and wife intended their reconciliation to be permanent. *See id.* For example, husband moved back into the family home, he had his name added to the home's title, and he kept his personal property there. He received the tax benefits accruing to a married couple, and he "shared finances" with wife. He lived in a "marital relationship" in which he had sexual relations with wife. He used the family car. He did not have to pay child support for his children. The family went on vacations. Husband and wife celebrated anniversaries. They held themselves out to the public as being married, including wearing wedding rings. Husband wanted to be involved in his children's lives, and he and wife acted as parents to the children. Indeed, the court found that the parties' son testified credibly that husband, wife, and the children lived and acted as an intact family, not as a separated one.

¶ 43    Evidence in the record supports all these factual findings. We therefore cannot disturb them. *See Schempp v. Lucre Mgmt. Grp., LLC*, 75 P.3d 1157, 1161-62 (Colo. App. 2003).

15

### III. Wife's Cross-Appeal

¶ 44    Wife asserts in her cross-appeal that the court erred when it denied her request for attorney fees under section 13-17-102. We agree.

### A. Additional Background

¶ 45    In her joint trial management certificate, wife argued that she was entitled to attorney fees under sections 14-10-119, C.R.S. 2024, and 13-17-102. She stated that the latter statute supported her request because husband's attempt to convert the dismissed separation decree into a dissolution decree was "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(6).

¶ 46    Wife did not address her request for attorney fees during the November 2023 hearing. The court issued its written order on December 17, 2023. Two days later, wife filed an amended affidavit of attorney fees and costs, which was accompanied by exhibits. The court denied wife's attorney fee request on December 24, 2023, stating that

> both parties noted that they would be seeking an award of attorney fees in the [joint trial management certificate] but neither party

16

presented arguments or evidence during the hearing in support of that request. The time to advance that request and present arguments and evidence in support of that request has passed as this case has been concluded and closed. To the extent that it was not made clear earlier, the [c]ourt denies any request for attorney fees.

B. Standard of Review and Applicable Law

¶ 47 "We review the district court's decision to award attorney fees . . . for an abuse of discretion, but we review the legal conclusions forming the basis for that decision de novo." *In re Marriage of Turilli*, 2021 COA 151, ¶ 36 (citing *In re Marriage of Gallegos*, 251 P.3d 1086, 1087 (Colo. App. 2010)). "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *In re Marriage of Fabos*, 2022 COA 66, ¶ 16.

¶ 48 Because marriage dissolution proceedings are civil cases, the court may award attorney fees under section 14-10-119, under section 13-17-102, or under both statutes. *In re Marriage of de Koning*, 2016 CO 2, ¶ 18 n.2.

¶ 49 Section 14-10-119 requires that parties present evidence of the reasonableness of attorney fees at the time of the hearing on the

motion or the proceeding for which they are requested.  C.R.C.P. 121, § 1-22(2) cmt. 2; *see In re Marriage of Connerton*, 260 P.3d 62, 67 (Colo. App. 2010).

¶ 50    Conversely, section 13-17-102 has no such requirement.  It provides, as is relevant to our analysis, that a "court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." § 13-17-102(2).  And a party must "file and serve a motion for attorney fees within [twenty-one] days of entry of judgment or such greater time as the court may allow." C.R.C.P. 121, § 1-22(2)(b).

## C.    Analysis

¶ 51    Wife does not contest the court's decision to deny her request for attorney fees under section 14-10-119; her focus is on her request under section 13-17-102.

¶ 52    The court's order denied her request under section 13-17-102 because "[t]he time to advance [it] and present arguments and evidence in support of [it] ha[d] passed."  But, under C.R.C.P. 121, section 1-22(2), wife's request for attorney fees fell within the

twenty-one-day timeframe to ask for attorney fees relying on section 13-17-102. We therefore conclude that the court misapplied the law, *see Fabos*, ¶ 16, when it denied wife's request under section 13-17-102.

¶ 53    Husband contends that there are four reasons why the court did not abuse its discretion when it denied wife's request for attorney fees under section 13-17-102. We disagree with all of them.

¶ 54    First, he asserts that wife did not preserve her attorney fees request under section 13-17-102 because she did not ask for them at the November 2023 hearing. But she asked for them in the joint trial management certificate and in the motion she filed two days after the court issued its order on December 17.

¶ 55    Second, husband submits that wife should have filed her attorney fees motion under section 13-17-102 within twenty-one days of February 2, 2024. But he does not explain why this date, as opposed to December 17, 2023 — the date that the court issued the order husband appeals — should govern the filing of wife's attorney fees motion. We therefore will not consider this submission. *See Vallagio at Inverness Residential Condo. Ass'n v.*

*Metro. Homes, Inc.*, 2017 CO 69, ¶ 40 (declining to consider an issue when a party offers no argument or authority to support it).

¶ 56 Third, husband asserts that wife did not file a motion for attorney fees; rather, she filed an affidavit of fees and costs. But the court did not rule that the form of the request was invalid; instead, it rejected wife's request only because it was untimely. When we look at the joint trial management certificate and the documents that wife filed two days after the court's December 17, 2023, order, we see that wife asked for attorney fees partly relying on section 13-17-102.

¶ 57 Last, husband contends that wife did not file a timely notice of appeal from the court's order denying her request for attorney fees. But wife filed her notice of cross-appeal on the attorney fees issue on February 9, 2024, which was forty-seven days after the court's order of December 24, 2023, that denied her request for attorney fees. This was within the forty-nine-day limit for filing a notice of appeal established by C.A.R. 4(a)(1), and, because husband filed his notice of appeal on February 2, 2024, it was within the fourteen-day limit for filing a cross-appeal under C.A.R. 4(a)(2).

¶ 58    We reverse the court's order denying wife's request for attorney fees under section 13-17-102, and we remand this case to the court to resolve that issue on its merits.  We take no position on what that resolution should be.

¶ 59    Wife asserts in her opening-answer brief that we "should . . . award fees for this appeal" because "this appeal represents a continuation of [h]usband's attempt to mislead the court"; because "this appeal is substantially unjustified and interposed for delay"; and because "[h]usband has more resources than [w]ife, so equity also demands a fee award."  These assertions couple wife's request for appellate attorney fees with her request for attorney fees in the district court, particularly the assertion that this appeal is "a continuation of [h]usband's attempt to mislead the court."  This means that resolving wife's request requires evaluating husband's appellate contentions in the context of his contentions in the district court.  On remand, the court shall decide whether wife is entitled to appellate attorney fees under section 13-17-102.

## IV.    Disposition

¶ 60    The court's judgment is affirmed.  The court's order denying wife's request for attorney fees is reversed, and we remand the case

to the court to resolve wife's motion for attorney fees under section 13-17-102, including her request for appellate attorney fees.

JUDGE KUHN and JUDGE MOULTRIE concur.