(927 P.2d 487)
No. 74,371

ROBERT E. LABARGE and VEEDA J. LABARGE, *Appellants*, v. CITY OF CONCORDIA, KANSAS, and BOARD OF COUNTY COMMISSIONERS OF CLOUD COUNTY, KANSAS, *Appellees*.

Opinion filed November 8, 1996.

Glenn H. Griffeth, of Topeka, for the appellants.

David E. Retter, of Vernon, Retter & Long, of Concordia, for appellee City of Concordia.

Robert A. Walsh, county attorney, for appellee Board of Cloud County Commissioners.

Before LEWIS, P.J., GERNON, J., and DAVID W. KENNEDY, District Judge, assigned.

LEWIS, J.: This is the third lawsuit spawned by a protracted and acrimonious dispute between the plaintiffs and the City of Concordia (City). The dispute involves a tract of real estate 189.7 feet long by 25 feet wide. The plaintiffs claim they are the owners of what we will refer to as "the disputed tract." The City denies any claim of ownership in the tract. Despite this fact, there are certain public records which state that the City is the owner of the disputed tract. On oral argument, the City's attorney advised this court that the City had offered to give the plaintiffs a quitclaim deed to the disputed tract, but the plaintiffs had refused the same, insisting they wanted damages. The plaintiffs' present action seeks damages from the City and Cloud County (County) based upon slander of title. The plaintiffs also sought a quiet title decree against both defendants. The trial court granted summary judgment in favor of the defendants, and the plaintiffs have appealed.

At the time of oral arguments, the parties advised this court that the plaintiffs no longer sought relief against the County. This was done, we assume, in view of the County's apparent immunity from suit under the statutes of this state. Based upon the announcement by the parties, we do not reach plaintiff's causes of action seeking relief against the County.

The facts of this case are not particularly stimulating. However, we find it necessary to undertake a rather exhaustive review of those facts for a full explanation of our decision.

In 1964, the plaintiffs purchased the following described tract of real estate from D. J. and Madeline M. Blackwood, husband and wife: "Tract One (1) of a Subdivision of a fraction of Southeast

Quarter (SE¼) of the Southeast Quarter (SE¼) of Section Five (5), Township Six (6) South, Range Three (3)."

In 1967, the plaintiffs obtained a deed to the same tract from Robert Snyder and Yvonne Snyder, husband and wife. This deed contained the same description as the deed from the Blackwoods, described above, except that it went on to add the following language: "[A]ccording to the Plat thereof on file in the Offices of the Register of Deeds of Cloud County, Kansas, and recorded at page Forty-four (44) of Plat Book Three (3) of the Records" of that office.

It also appears that, subsequently, plaintiffs executed a mortgage on the premises which utilized the same description.

An examination of the plat in question is required to ascertain the exact location of the tract and its boundaries. The description and the deeds to the plaintiffs contained no points of beginning and recite no metes and bounds to indicate the size of the tract in question.

Under these circumstances, the plat of the tract on file in the office of the register of deeds became in essence a part of the legal description set forth on the deed. In *Fitzpatrick v. Crowther*, 100 Kan. 355, Syl. ¶ 1, 164 Pac. 300 (1917), the Supreme Court said:

"A general warranty deed conveyed twenty-four lots described by numbers and as fronting on certain streets 'all in Jones' addition to the city of Salina, Kansas.' *Held*, the plat of the addition mentioned being then on record became a part of the deed for the purpose of identifying the property and for certainty in the description to the same effect as if the reference to the addition had been followed by the phrase 'according to the recorded plat thereof.' "

In *Roberts v. Osburn*, 3 Kan. App. 2d 90, 99, 589 P.2d 985, *rev. denied* 225 Kan. 845 (1979), we said:

"The practice of referring to a plat in order to describe property which is being deeded is discussed at 23 Am. Jur. 2d, Deeds § 232, p. 274:

'Such a reference to another instrument for description of the subject matter has the effect of incorporating such instrument into the description so that that which is described will pass. When reference is made to a map or other document as describing the land, the description appearing in such map or document is made a part of the deed as fully and effectually as if copied therein, provided the deed and the document of reference together

yield such description as would have been sufficient if set forth entirely in the deed.' "

It is also worth noting, at this point, that in Kansas the grantor does not represent or guarantee the courses, distances, measurements, or quantity of the lots to be set forth in the recorded plat. *Fitzpatrick v. Crowther*, 100 Kan. 355, Syl. ¶ 2. Thus, in *Fitzpatrick*, the plan indicated the lots were 150 feet long and 1,220 feet wide. A survey revealed that the lots were in fact only 134.8 feet wide and 1,105 feet long. The grantee attempted to sue the grantor for the shortage but was unsuccessful based upon the rule announced by the court relative to what is guaranteed by a grantor under the circumstances.

In this case, resort to the plat of the tract in question is necessary to determine its location and its size. An examination of that plat indicates that the plaintiffs' east boundary line is located 25 feet west of the east section line of section 5. The plat indicates that running along the east section line of section 5 and 25 feet on each side thereof is a county road, which was also designated as Republican Street in the City of Concordia. Despite what the plat appears to show, the plaintiffs have considered their east boundary line to be the section line, which is some 25 feet east of the boundary line of tract I as shown on the plat.

The trouble with plaintiff's title began in 1984. At about that time, the City apparently decided to improve Republican Street, which lies on each side of the east section line of section 5. As a part of that process, the City obtained a quitclaim deed from the county to the following described tract of real estate:

"A tract of real estate located in the Annex South Republican Street in Concordia, Kansas, beginning at the Southeast Corner of Section Five (5), Township Six (6) South, Range Three (3) West, in Cloud County, Kansas, thence North along the East line of Section Five (5), Nine Hundred Ninety (990) Feet; thence West Twenty-five (25) Feet to a point being on the South line of College Heights Addition to Concordia, Kansas; thence South parallel to the East line of Section (5), Nine Hundred Ninety (990) Feet to the South line of Section Five (5); thence East Twenty-five (25) Feet to the point of beginning, all of said real estate being locate[d] in Cloud County, Kansas."

The record indicates that the metes and bounds description set forth above was developed by reference to the plat which includes

tract I and which is on record in the office of the register of deeds. The deed from the County was intended to quitclaim to the City any interest the County may have had in the county road, now Republican Street, which was purportedly located on each side of the section line. There is, however, no clear evidence that either the county road or Republican Street was ever open, and it is impossible for us to determine whether the County had an interest in the real estate to quitclaim to the City. It is of importance to note that the description of the tract quitclaimed by the County to the City includes the disputed tract. That tract, as pointed out earlier, is 189.7 feet by 25 feet, whereas the tract deeded to the City is 990 feet by 25 feet.

If one examines the plat and compares the description of plaintiff's tract with the tract described in the quitclaim deed, one would not find the descriptions to be overlapping or conflicting. Indeed, an examination of the plat of tract I indicates that the eastern boundary of that tract is 25 feet west of the section line. The tract quitclaimed to the City by the County begins on the section line and runs from that line 25 feet west. This deed appears to convey an area west of the section line of section 5, which plaintiffs did not own, at least from a visual examination of the plat to tract I.

The plaintiffs claim they own the disputed tract and that the metes and bounds measurements shown on the plat are wrong. The plaintiffs have presented evidence to the effect that if one begins at the northwest corner of tract I and measures 250 feet east, the east boundary line of tract I is, in fact, the section line and, thus, they lay claim to this disputed area.

The plaintiffs have contributed some to the confusion. Prior to the annexation by the City, the plaintiffs gave the City an easement on the following described real estate:

"The East Ten Feet (E.10') of the following described tract of land:

"Tract 1 of a Subdivision of a fraction of Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) of Section Five (5), Township Six (6) South, Range Three (3) West of the 6th P.M., in Cloud County, Kansas, more fully described as follows: Beginning at a point 30 feet North and 25 feet West of the Southeast Corner of the Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) of said Section

Five (5), thence West 250 feet parallel to the South line of said Section Five (5), thence North 189.7 feet parallel to the East line of said Section Five (5), thence East 250 feet, thence South 189.7 feet to the point of beginning and containing 1.09 acres more or less."

This consent to easement and annexation covering the real estate described above was recorded with the register of deeds. The description in this deed is consistent with the apparent boundaries of the plaintiffs' real estate as shown by the plat. In other words, the tract described in the consent to easement and annexation documents has an eastern boundary which is located 25 feet west of the section line on section 5. The consent to easement and annexation does not cover the disputed tract.

In 1988, the County's taxing authorities prepared a real estate assessment record. This record describes a tract of real estate as follows:

"A tr[act] of land located in the annex South Republican Street Beginning at the Southeast Corner of 5-6-3 North along the E[ast] line of sec[tion] 5, 990'; thence W[est] 25' to a p[oint] being on the S[outh] line of College Heights Add[ition]; thence S[outh] parallel to e line of sec[tion] 5, 990' to s line; thence E 25' to pob [street.]"

The real estate assessment record shows the owner of this tract as "City of Concordia." The 990-foot by 25-foot tract described in the real estate assessment record includes the disputed tract which is involved in this lawsuit.

As we pointed out, there were two prior lawsuits essentially litigating the same issue. In 1986, the City sought to annex the undisputed portion of the plaintiffs' real estate into the City. The plat referred to earlier in this opinion was used to describe the property. At the annexation hearing, the plaintiffs argued their tract was not properly shown on the plat. An engineer for the City confirmed that a mistake had been made in the distance calls on the plat, and the plaintiffs apparently tried to block the annexation by claiming their property was not correctly described. Despite those complaints, the plaintiffs' tract was annexed into the City.

The plaintiffs appealed the annexation to the district court in case No. 87-C-01. That court limited its scope of review to the

question of whether the City had the authority to annex the property, and the court held that it did. The court went on to find:

"3. The legal description of plaintiffs' land annexed by the City's Ordinance No. 2469, described as:

Tract one (I) of a Subdivision of a fraction of Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) of Section Five (5), Township Six (6) South, Range Three (3) West, in Cloud County, Kansas, more fully described as follows: Beginning at a point 30 feet North and *25 feet West of the Southeast Corner* of the Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) of said Section Five (5), thence West 250 feet parallel to the South line of said Section Five (5), thence North 189.7 feet parallel to the East line of said Section Five (5), thence East 250 feet, thence South 189.7 feet to the point of beginning and containing 1.09 acres more or less, according to the plat thereof on file in the Cloud County, Kansas Register of Deeds Office, ' page 44 of Plat Book #3, except the East Ten Feet (E. 10') thereof, previously voluntarily annexed by the owners thereof to the City of Concordia, Kansas,

is *sufficiently described for purposes of annexation*, so that all persons had notice as to what was being annexed and the purpose." (Emphasis added.)

This description, deemed adequate by the court in the annexation case, did not include the disputed tract.

The plaintiffs then filed a quiet title suit against the City in case No. 87-C-100. In that action, the trial court granted summary judgment in favor of the City and held:

"1. . . .The City's motion for summary judgment is granted for the legal reasons set forth in the City's brief filed herein, because plaintiffs are collaterally estopped from raising the issues set out in their pleadings by virtue of failure to file a timely appeal from the summary judgment adverse to plaintiffs in Case No. 87-C-01 . . . .

"2. The Court further finds and orders that the city claims no interest in any real estate owned by plaintiffs by virtue of the annexation proceedings in Case No. 87-C-01 except easements of record and that the annexation proceedings constitute no cloud on plaintiffs' title to any of plaintiffs' real estate, and that plaintiffs continue to own their real estate situated in Cloud County, Kansas except and subject only to easements and restrictions of record."

In 1988, both plaintiffs and the City appeared before the Board of Tax Appeals (BOTA) concerning the issue of who owned the disputed tract and who should pay the taxes on it. The plaintiffs took the position that the City had "taken" the disputed tract from

them and that this had decreased the value of their property. BOTA found, among other things, as follows:

"5.  The difference in legal descriptions used in the annexation proceedings is directly attributable to the fact that the City had already annexed the 25 [feet] of the LaBarge property subject to a street easement. We can agree that the legal description may inadvertently extend 25 feet beyond Tract 1's boundary. However, the annexation proceedings only established city boundaries, not the LaBarge[s'] ownership.

"6.  It is possible that annexation could affect value if inclusion in a municipal taxing district radically increased the tax burden for a particular property. However, we find no evidence that the market value was altered by this single factor alone.

"7.  The County offered to 'correct' the legal description for assessment purposes. We find no evidence that the legal description for Tract 1 was ever changed, except to note the additional street easements. However, we agree that assessment records should reflect the actual property owned and the easements of record. If any change in the records is required to reflect the actual property owned, Cloud County is directed to do so."

The final confusion as to who owns what occurred when the county tax assessment records, referred to above, were completed by the County.

In the present lawsuit, the plaintiffs attempt to quiet title to the disputed tract. The trial court refused to do so and granted summary judgment on the quiet title action in favor of the defendants, finding: "The pleadings in Cloud County Cases No. 87-C-01 and 87-C-100 reveal that the same issues raised in the instant case either were or could have been raised in one or both of the previous cases."

In the slander of title action, the court granted summary judgment in favor of the defendants, finding that the defendants had not slandered the title of the plaintiffs. The court went on to find:

"2. LaBarges' pre-December 31, 1987, claims are barred by res judicata, the applicable statutes of limitation[s], failure to appeal and estoppel by judgment.

"3. LaBarges' post-December 31, 1987, claims are barred by the applicable statutes of limitations and the failure to appeal."

From the trial court's decision, the plaintiffs have appealed.

## SLANDER OF TITLE

The plaintiffs argue that this case should have gone to trial on

the factual question of whether the City slandered its title. We do not agree.

To begin with, it is difficult, under the facts shown, to find an actionable slander of the plaintiffs' title.

The plaintiffs' slander of title action is premised entirely on the fact that the county tax assessment rolls show the City as the owner of the disputed tract. We agree with the trial court that any actions taken by the City or Cloud County which occurred prior to December 31, 1987, are barred by res judicata, collateral estoppel, and because the plaintiffs failed to appeal the trial court's decision against them in cases Nos. 87-C-01 and 87-C-100. Whether the trial court was right or wrong in the decision reached in those two cases is irrelevant. The plaintiffs did not appeal either decision and are in no position to raise issues in this case which either were or could have been disposed of in those two cases.

The plaintiffs' slander of title action, however, is based on events which took place after those two lawsuits were decided. The question we must decide is whether the City slandered the plaintiffs' title when the County compiled its tax assessment roles in 1988 and named the City as the owner of the disputed tract. "Slander of title is defined as 'a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing him injury.' 50 Am. Jur. 2d, Libel & Slander § 539, p. 1058." *Safety Federal Savings & Loan Ass'n v. Thurston*, 8 Kan. App. 2d 10, 13, 648 P.2d 267 (1982).

If the plaintiffs are truly the owners of the disputed tract, then the statement showing the City as the owner is wrong and, if it is malicious, it may very well have been a slander to the plaintiffs' title.

The plaintiffs' problem is that the slander, if indeed there was one, was not committed by the City but by the County in the preparation of its tax assessment rolls. The City had absolutely nothing whatsoever to do with the County's published conclusion that it owned the disputed tract.

K.S.A. 79-408 requires the county clerk to compile the real estate assessment rolls for the county. The statute provides that such a roll "shall contain a correct and pertinent description of each

piece, parcel or lot of real property in numerical order as to lots and blocks, sections or subdivisions." The clerk is directed to consult the "real estate transfer record in the office of the clerk, the records and plats in the office of the register of deeds" in compiling the tax assessment rolls.

The tax assessment rolls in this case accurately reflect what is shown by the plat and the records on file in the office of the register of deeds. As we pointed out earlier, the plat clearly shows that the eastern border of the plaintiffs' tract I is 25 feet west of the east section line of section 5. The only instrument of record which described the disputed tract is the deed from the County to the City. The assessment rolls reflect what those records show.

The tax assessment rolls are prepared for use in the assessment of taxes. K.S.A. 1995 Supp. 75-6104 provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

(f) the assessment or collection of taxes or special assessments."

The term "governmental entity" is defined in this state to include both county and a city. See K.S.A. 1995 Supp. 75-6102(b) and (c).

It is obvious that the County cannot be held liable in damages resulting from the preparation of its tax assessment rolls, and we so hold. These rolls were prepared to assist in the assessment and collection of taxes, and the County is specifically immune from liability by the statute quoted above. It is difficult to fathom how the City could be responsible for the preparation of a document it had nothing to do with and could not have changed if it wanted to. In any event, the immunity provided to the County by 75-6102(b) and (c) extends to the City under the facts shown.

If the County is granted immunity from liability in the preparation of its tax rolls, surely that immunity must extend to an innocent party who may have been wrongly named as the owner of a particular tract. We conclude the immunity of the County for damages under the circumstances shown extends to any potential liability on the part of the City which played no role in making up the tax assessment records. In any event, even if the City were not

immune, we conclude the evidence shows that the City did nothing with regard to the tax assessment rolls which caused the plaintiffs' title to be slandered.

We also agree with the trial court that the plaintiffs' action for slander of title was barred by the applicable statute of limitations. If there was a slander of title, it occurred in 1988 when the tax assessment record was prepared and filed. Although we cannot pinpoint the exact date on which the plaintiffs learned that the City had been listed as the owner of the disputed tract, we know that by at least August 1989 the plaintiffs were aware of this fact. This lawsuit was filed on June 20, 1994—nearly 5 years after the plaintiffs discovered the alleged slander.

In Kansas, there is no specific statute of limitations dealing with slander of title:

"[T]he view adopted in a majority of the several American jurisdictions where the question has arisen is that in the absence of a statute expressly referring to actions for slander of title, a statute of limitations relative to actions for libel and slander is equally applicable to actions for slander of title." Annot., 131 A.L.R. 838.

See, *e.g.*, *Norton v. Kanouff*, 165 Neb. 435, 86 N.W.2d 72 (1957).

We believe the majority view is correct, and we hold that in Kansas K.S.A. 60-514(a) is the applicable statute of limitations dealing with actions for slander of title. Under that statute, an action for slander must be brought within 1 year. In this case, nearly 5 years passed since the publication and discovery of the alleged slander, and we conclude that the plaintiffs' action for slander of title was barred by the statute of limitations.

The plaintiffs argue that under *Dwelle v. Home Realty & Inv. Co.*, 134 Kan. 520, 525-26, 7 P.2d 522 (1932), the slander continues for as long as it remains on record. The plaintiffs argue that under those circumstances, any action filed while the slander remains of record is filed within the statute of limitations. We agree that *Dwelle* contains language that is supportive of the argument made by the plaintiffs. However, under the facts shown, whether the slander was continuous or not is largely irrelevant. In our view, the statute of limitations began to run on the date the plaintiffs discovered that their title had been slandered. See, *e.g.*, *McKown v.*

*Dun & Bradstreet, Inc.*, 744 F. Supp. 1046, 1049 (D. Kan. 1990). We do not believe that a plaintiff can discover that a slander exists and then wait as long as he or she pleases or until his or her damages increase on the theory that the slander is continuous. The theory advanced by the plaintiffs in this case would extend the period of limitation for an indefinite and unforeseeable period of time after the wrong is discovered. This is not the law, and we consider such a proposition to be at variance with the policy behind the statute of limitations. We do not hesitate to hold that the plaintiffs' slander of title action was barred by the applicable statute of limitations.

## QUIET TITLE SUIT

The final question presented is whether the plaintiffs should have been permitted to proceed with their quiet title action. That action is based solely on the publication of the tax assessment rolls by Cloud County in 1988. For that reason, it is not barred by the judgment in cases Nos. 87-C-01 or 87-C-100. It is not possible to argue that the plaintiffs should have raised a cloud on their title in 1987 which did not exist until 1988.

K.S.A. 60-1002 allows an owner of real estate to bring a quiet title suit "against any person who claims an estate or interest therein" which is adverse to that of the owner. The action may be brought "for the purpose of determining such adverse claims."

The tax assessment rolls of Cloud County show the City to be the owner of the disputed tract, which is adverse to the interest claimed by the plaintiffs in the disputed tract. This record may or may not show up in an examination of the records of the register of deeds, but that does not mean it does not exist. The record shows that the City may be an adverse claimant to the ownership of the plaintiffs as to the disputed tract in question. That surely creates a circumstance under which the plaintiffs would be entitled to quiet title to the real estate.

It appears to us there is a genuine question as to who owns the disputed tract. As we have said, a visual examination of the plat to tract I indicates that the plaintiffs do not own the disputed tract and one could conclude that the tax assessment record is correct

in its conclusion that the City owns that tract. There is, however, ample evidence in the record to show that the distance calls on the plat in question are incorrect and that, in fact, the plaintiffs have a valid claim to ownership of the disputed tract. So long as there is no judicial determination as to who owns that tract, the ownership will remain a mystery and the City will remain an adverse claimant to any interest the plaintiffs may have in the disputed tract.

The ownership of the disputed tract is being litigated for the third time and, as of yet, no court has ruled on the merits of the plaintiffs' quiet title suit. We do not believe that this state of affairs is of benefit to any of the parties to this action or to the public in general. This suit is different from the first two in that it involves an adverse claim, which springs from a record which was not created until 1988. We think it to be in the public interest to determine who, in fact, owns the disputed tract.

We hold that the plaintiffs have shown that the defendants may claim an adverse interest in the real estate by virtue of the tax assessment rolls which show the City to be the owner of the tract around which this action revolves. The trial court erred in concluding that as to this claim, the plaintiffs' quiet title action was barred by prior judgment or statutes of limitations. It erred in granting summary judgment to the defendants as to the plaintiffs' quiet title action. We reverse and remand the quiet title action *only* for trial.

This matter could be rather easily resolved by the execution of the quitclaim deed from the City to the plaintiffs, quitclaiming any interest the City may have in the disputed tract. The City has advised this court on oral argument that it does not claim an ownership interest in the disputed tract. Under these circumstances, we believe that with our resolution of the plaintiffs' damage claims, some settlement of the title issues presented in this case should be possible. We urge the parties to reach such a settlement. If they cannot, the trial court will determine the validity of the claims to the disputed tract on remand.

Affirmed in part, reversed in part, and remanded.