IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,122

PAUL L. SAVAGE and GAYLE WILLIAMS, Trustees of the
Savage-Harrington Family Trust, PAUL L. SAVAGE, and PAULA J. SAVAGE,
*Appellees*,

v.

AMAL TIMSAH,
*Appellant*.

SYLLABUS BY THE COURT

1.

Attorney fees and expenses of litigation other than court costs that are incurred by a prevailing party are not recoverable against the defeated party in the absence of a clear and specific statutory provision or an agreement between the parties.

2.

Elements of a claim for slander of title are: (1) an act or statement, oral or written, made in disparagement of an owner's title to real or personal property (2) that is false, (3) that is made with malice and without probable cause, (4) that is communicated or published to a person or persons other than the owner, and (5) that results in pecuniary loss or special damages to the owner.

3.

Under K.S.A. 60-209(g), special damages must be pleaded with specificity.

1

4.

When a plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant, Kansas recognizes a "third-party litigation exception"—more properly characterized as "special damages"—permitting a prevailing plaintiff to be made whole for fees and expenses incurred related to the litigation with the third party (separate from the claim against the tortfeasor or wrongdoer) that were incurred as a direct result of the defendant-tortfeasor's conduct. Where there is no third party, the exception does not apply.

5.

Absent contract, statute, or third-party litigation, the special damages recoverable in a slander of title claim do not include the attorney fees and expenses incurred in the litigation in which it is asserted.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 7, 2025. Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Oral argument held November 5, 2025. Opinion filed May 15, 2026. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*Jerry D. Bogle*, of Young, Bogle, Wells & Blanchard, P.A., of Wichita, argued the cause and was on the briefs for appellant.

*Patrick B. Hughes*, of Adams Jones Law Firm, P.A., of Wichita, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

WALSH, J.: This single-issue appeal asks us to consider the propriety of the district court's award of attorney fees, characterized as damages, flowing from a common-law slander-of-title claim. As framed by the parties on petition for review of the Court of

Appeals decision affirming the award, this question of first impression pits our general "American Rule" (that, unless authorized by statute or contract, each side bears his or her own attorney fees and costs of litigation) against an argument, supported by decisions in several other jurisdictions as well as secondary sources, that the attorney fees and costs necessary to clear title can constitute a measure of special damages recoverable for slander of title.

We conclude that, under our general American Rule, although special damages are a necessary element of a slander of title claim, those special damages cannot include the attorney fees and expenses incurred in the litigation in which the claim is asserted. Any reasonable debate to be had about whether attorney fees should be among the special damages recoverable for slander of title is best addressed by the Legislature. Further, our recognized "exception" to the American Rule for costs of certain third-party litigation— which is perhaps more properly characterized as "special damages"—does not apply to the facts and procedural posture of this case. Mindful that our equitable powers do not extend to awarding attorney fees not authorized by statute or contract (or where there has been no separate litigation with a third party), we conclude that the district court was not authorized to award plaintiffs their attorney fees as damages in this case. Accordingly, we reverse the panel's decision and the district court's award.

FACTS AND PROCEDURAL BACKGROUND

Plaintiffs are Paul Savage and Gayle Williams, as Trustees of the Savage-Harrington Family Trust, and Paul Savage and Paula Savage in their personal capacity. According to the panel's undisputed recitation of the underlying facts, plaintiffs owned four triplexes located in Wichita, which were originally built around 1940. *Savage v. Timsah*, No. 127,122, 2025 WL 444125, at *1-2 (Kan. App. 2025) (unpublished opinion). Plaintiffs' property interest, acquired in 1979, included an easement over a one-way dirt

3

alleyway connecting the apartment complex's alley-side parking lot to a street that is used daily by the complex's residents.

In 2009, defendant Amal Timsah acquired the land burdened by the easement when she bought a street-facing flower shop. Tensions over use of the easement came to a head in the summer of 2022 when Timsah dumped asphalt and debris from her parking lot in a pile in the middle of the easement "to let [plaintiffs] have a taste of their own medicine."

The plaintiffs sued Timsah in September 2022, seeking declaratory and injunctive relief and "such further relief, including court costs, as may be just and proper." After pretrial motions, including Timsah's motion for summary judgment and briefing thereon, plaintiffs filed an Amended Petition in April 2023 seeking the same relief. The district court denied Timsah's dispositive motion and set the case for trial.

Though neither the Petition nor the Amended Petition mentioned it, the district court's Amended Pretrial Conference Order, issued June 29, 2023, by agreement of the parties, reflected that the plaintiffs' claims now included a slander of title claim because Timsah "wrongfully denied the existence of the easement . . . requiring this action to confirm their rights." Plaintiffs' contentions and theories of recovery stated that "the costs to the plaintiffs of this action, including their attorney fees, are recoverable damages for slander of title." Among plaintiffs' issues of fact or mixed law and fact were whether "the defendant slandered the plaintiffs' title [and if] so, what damages did the plaintiffs incur?"

In objecting to a motion by Timsah to continue the trial setting, plaintiffs' counsel noted the prejudice that would result from further delay: "plaintiffs bring this action in order to reopen a driveway the plaintiff [*sic*] blockaded with a large pile of asphalt in July 2022." The case went to a bench trial as scheduled at which Timsah represented herself.

4

At trial, Paul Savage testified that the plaintiffs had spent "over $33,000 of expenses so far with lawyers" to deal with the situation. In closing, plaintiffs' counsel stated that "[t]he damage [resulting from the slander of title] is in the form of having to bring an action in order to resolve the question of ownership that was raised by the defendant's statements . . . and the costs of this action have been, to date, $33,500, according to the evidence."

Ruling from the bench following the trial, the district court found that the plaintiffs had a valid easement under multiple theories. Additionally, citing *Campbell v. Cubbon,* 98 Kan. 642, 158 P. 1121 (1916),  and *Reese v. Brame*, No. 67,131, unpublished opinion filed April 10, 1992 (Kan. App.), the court found that Timsah had "slandered the title of [P]laintiffs' property rights in their easement" by "denying the existence of the easement" and by illegally blocking it to "'[t]each them a lesson[]'" even despite the advice of counsel that plaintiffs' easement was likely valid. The district court concluded this indicated malice. After entering orders permitting plaintiffs to remove the obstruction and "enjoy the use of the easement" and forbidding Timsah from interfering "with that process" or from blocking the easement in the future, the district court ordered "[a]ttorney's fees . . . as damages for the slander of title claim" and took the amount under advisement "pending the submission of an affidavit by counsel with an accounting of the hours spent so that the Court can make a finding that the requested amount of $33,500 is reasonable." In a subsequent journal entry, entered October 17, 2023, the district court awarded "attorney fees as damages from the slander of title, in the amount of $33,165."

Timsah appealed, raising a number of issues. In a thorough and detailed opinion, a panel of the Kansas Court of Appeals affirmed the district court's conclusion that the plaintiffs had an easement and that Timsah had slandered their title to that easement. *Timsah*, 2025 WL 444125, at *1. The panel then considered Timsah's argument that the district court lacked authority to award attorney fees. *Timsah*, 2025 WL 444125, at *2-9. Although Timsah framed the issue as an unauthorized fee-shift, the panel drew

5

what it characterized as a "critical" distinction between an award of "fees because [the plaintiffs] prevailed" and an award of "fees as damages for their slander of title claim." 2025 WL 444125, at *9:

> "Timsah misunderstands the basis for the district court's award of attorney fees. The district court did not award plaintiffs their fees because they prevailed—it awarded fees as damages for their slander of title claim. This distinction is critical. The district court's decision did not shift the burden of fees to the successful party but instead compensated plaintiffs for costs incurred to remove the cloud Timsah placed on plaintiffs' title to the easement." *Timsah,* 2025 WL 444125, at *9.

The panel discussed three century-old Kansas Supreme Court cases—*Campbell*, 98 Kan. 642, *Nicholson v. Fawley*, 112 Kan. 124, 210 P. 482 (1922), and *Vaught v. Jonathan L. Pettyjohn & Co.*, 104 Kan. 174, 178 P. 623 (1919)—along with several unpublished Court of Appeals decisions, including *Diehl v. Kowalski*, No. 114,706, 2016 WL 6651575, at *3-4 (Kan. App. 2016) (unpublished opinion), *Sahgal v. DMA Electric, Inc.*, No. 105,466, 2012 WL 718945 (Kan. App. 2012) (unpublished opinion), and *Reese*, No. 67,131. The panel also discussed out-of-state cases, including what it considered the thoughtful reasoning in *Horgan v. Felton*, 123 Nev. 577, 587, 170 P.3d 982 (2007). Then, citing to the Restatement (Second) of Torts § 633, the panel concluded that the district court "was authorized to award plaintiffs' fees as damages in their slander of title claim." *Timsah*, 2025 WL 444125, at *11-12.

Timsah petitioned this court for review solely on the issue of the attorney fee award, and we granted review.

6

As a threshold matter, we discuss issue preservation. Before this court, plaintiffs assert that Timsah failed to preserve the attorney fee issue before the district court and failed to explain why the panel should consider it for the first time on appeal. Plaintiffs made a similar argument to the panel, but the panel considered the merits of Timsah's issue without mentioning any preservation problem.

Plaintiffs are correct that, although the Court of Appeals has discretion to address an unpreserved issue for the first time on appeal, this court can still consider whether a panel abused that discretion. *Schutt v. Foster*, 320 Kan. 852, 855, 572 P.3d 770 (2025). Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires a party to explain "why the issue is properly before the court" if the party failed to raise it at the district court. The failure to discuss preservation exceptions in an opening brief fails to satisfy Rule 6.02(a)(5). E.g., *In re D.J.*, 321 Kan. 75, 87, 573 P.3d 255 (2025). And an appellate court commits an error of law—and thus abuses its discretion—by reaching the merits of an issue despite a party's failure to brief exceptions to the preservation requirement. *Schutt*, 320 Kan. at 860.

But plaintiffs' preservation argument ignores Kansas Supreme Court Rule 8.03(c)(3)(B) (2025 Kan. S. Ct. R. at 57), which provides that, "If the Court of Appeals does not decide an issue properly presented to it, the cross-petitioner must raise that issue to preserve it for review." Here, plaintiffs did not file a cross-petition or conditional cross-petition for review, thereby undermining their claim that Timsah failed to preserve the issue for review—and their implicit argument that the panel abused its discretion by considering the issue in the first place. E.g., *State v. Ballard*, 320 Kan. 269, 276, 566 P.3d 1092 (2025) (failure to cross-petition for review of an issue renders the issue unpreserved). Accordingly, we deem plaintiffs' preservation issue unpreserved and

address the question presented: did the district court err in awarding—and the Court of Appeals' panel in affirming—attorney fees as damages for plaintiffs' slander of title claim?

Although the reasonableness of a district court's award of attorney fees is reviewed for abuse of discretion, Timsah makes no argument about the amount awarded—only the court's authority to award fees at all. "The issue of the district court's authority to award attorney fees is a question of law over which appellate review is unlimited." *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009).

1. *The American Rule prohibits fee shifting unless agreed by the parties or authorized by statute.*

When it comes to attorney fees, Kansas courts follow the "American Rule." E.g., *Idbeis v. Wichita Surgical Specialists, P.A.*, 285 Kan. 485, 488-89, 173 P.3d 642 (2007). Under this rule:

> "[A]ttorneys' fees and expenses of litigation, other than court costs, incurred by a prevailing party are not recoverable against the defeated party in the absence of a clear and specific statutory provision or an agreement between the parties. Without statutory authority or an agreement by the parties, a trial court's equitable powers do not extend to the awarding of attorney fees. Consistent with the general rule that attorney fees are not awarded to the prevailing party, statutory provisions allowing fees are typically construed strictly. [Citations omitted.]" 285 Kan. at 488-89.

In short, unless authorized by statute or contract, each side bears his or her own fees.

Kansas courts have reiterated this principle in many different contexts over the years, dating back to the earliest days of statehood. See, e.g., *Stover v. Johnnycake*, 9 Kan. 367, 370, 1872 WL 638 (1872) ("A judgment for attorney's fees, or counsel's fees, for services rendered in the same case is never allowed in an action on contract, unless stipulated for, or unless expressly authorized by statute.").

It is uncontroverted that no statutory or contractual basis exists for the fees awarded here. Therefore, under the American Rule, the award of fees would be improper. But before we leave the answer there, we must address and distinguish the authorities the plaintiffs cite in favor of the district court's award. And before we can do that, we must first examine what constitutes slander of title in Kansas.

2. *Although slander of title requires proof of special damages, attorney fees incurred within the slander of title litigation are ineligible.*

Kansas law first described slander of title in the 1869 case of *Stark v. Chitwood*, 5 Kan. 141, 144, 1869 WL 415 (1869), in which this court noted that, "[t]o support an action for slander of title, special damages must be alleged" and that alleging loss in general terms "is not sufficient." 5 Kan. at 144 (citing Stark. on Sland. 158, 159, 323) (also noting the required element of malice and probable cause, holding that where a defendant acts in pursuance of a *bona fide* claim asserted honestly, "especially if he was acting under the advice of counsel, though without right, he will not be liable"). Accord *Dennis v Smith*, 186 Kan. 539, 548, 352 P.2d 405 (1960); *Watkins v. Conway*, 124 Kan. 79, 83, 257 P. 937 (1927); *Bourn v. State Bank*, 116 Kan. 231, 226 P. 769 (1924); *Carbondale Inv. Co. v. Burdick*, 67 Kan. 329, 335, 72 P. 781 (1903) (citing to Newell, Slander and Libel [2d ed.] p. 203, which defined the right of action for slander of title to be in case "'any one who falsely and maliciously defames the title of property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss'").

See also *In re Long*, No. 09-12827, 2011 WL 721531, at *5 (Bankr. D. Kan. 2011) (unpublished opinion) (observing that "[s]lander to title is a species of the intentional tort of slander" that can "only be sustained where the charging party alleges that special damages have resulted from actions affecting the party's title taken with malice and probable cause").

More recent cases—of which there are few—have defined the tort of slander of title in shorthand as "'a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing him injury.'" *LaBarge v. City of Concordia*, 23 Kan. App. 2d 8, 16, 927 P.2d 487 (1996) (quoting *Safety Federal Savings & Loan Assn. v. Thurston,* 8 Kan. App. 2d 10, 13, 648 P.2d 267 [1982] [quoting 50 Am. Jur. 2d, Libel & Slander § 539]). See Peck & Steadham, *Don't Be Stupid or Mean:  Be Aware of Slander of Title in Kansas*, 93 J.K.B.A. 50, 51 (June 2024) (noting that, of "at least 34" published Kansas cases mentioning the subject, "only a few" reached the merits); Westerbeke, *Survey of Kansas Tort Law:  Part II*, 50 U. Kan. L. Rev. 225, 308 n.469 (2002) (classifying slander of title as one of several "narrower but related older causes of action" that encompass the "modern" tort of injurious falsehood).

The "injury" required is not injury in the general or presumed sense:  as set forth in *Chitwood*, special damages must be alleged as a necessary element of the tort. *Chitwood*, 5 Kan. at 144. Put differently, damages are not presumed in a slander of title action. Ritchie, *A Fresh Look at an Old Tort:  Litigating Slander of Title in Mineral Disputes*, 115 W. Va. L. Rev. 1097, 1109 (2013).

Consistent with our caselaw and its reliance on American Jurisprudence (Second Edition), we formally recognize the elements of a slander-of-title claim as:  (1) an act or statement, oral or written, made in disparagement of an owner's title to real or personal property (2) that is false, (3) that is made with malice and without probable cause, (4) that

10

is communicated or published to a person or persons other than the owner, and (5) that results in special damages, i.e. actual pecuniary loss to the owner.

We pause to note that, because Timsah has not challenged the validity of plaintiffs' slander of title judgment on appeal, we cannot consider whether the plaintiffs' case would have satisfied these elements. Instead, we focus only on whether attorney fees are recoverable as special damages for slander of title under Kansas law. We have not squarely considered this question before. See *Sahgal*, 2012 WL 718945, at *4 (noting that, although authorities outside Kansas have recognized attorney fees as a component of allowable damages, "[w]e have found no Kansas case directly or even obliquely addressing whether attorney fees expended in a successful slander of title suit may be recovered as a damage in that action"). But see *Dwelle v. Home Realty & Inv. Co.*, 134 Kan. 520, 7 P.2d 522 (1932) (affirming judgment for a plaintiff arising from his action to quiet title and for damages resulting from slander of title, including attorney fees of $150, without discussion). We now hold that, outside of the third-party litigation exception, discussed below, attorney fees are not valid special damages for slander of title.

Special damages are those which, although resulting from the commission of the tort, are neither such a necessary result that they will be implied by law nor will they be deemed within the contemplation of the parties, which is why they must be pleaded with specificity. *Woodmont Corp. v. Rockwood Ctr. Partnership*, 811 F. Supp. 1478, 1483 (D. Kan. 1993); K.S.A. 60-209(g) (requiring special damages be specifically pleaded). See "special damages," Black's Law Dictionary 491 (12th ed. 2024). But we need not speculate on what special damages the plaintiffs *could* have pleaded. Instead, we consider only whether the attorney fees plaintiffs incurred here qualify.

As plaintiffs and our concurring colleagues point out, a number of other states' courts recognize that "attorney's fees incurred in removing a cloud from the plaintiff's

11

title are recoverable as special damages in a slander of title suit"—although these cases typically distinguish attorney fees "'incurred . . . to clear title and remove the doubt cast upon their property rights by the recorded falsehood," which are recoverable, from "the attorney's fees and costs associated with bringing the slander of title action itself," which are not. Ritchie, *A Fresh Look at an Old Tort: Litigating Slander of Title in Mineral Disputes*, 115 W. Va. L. Rev. at 1114-15 (citing cases). As we will discuss below, this distinction largely tracks with our third-party litigation exception to the American Rule.

The plaintiffs' response to the Petition for Review offers a lengthy string cite in support of this position. And the Court of Appeals' decision notes thoughtful explanations offered by certain of our sister states that have recognized attorney fees as permissible "special damages" in slander of title actions, "because 'the defendant . . . by intentional and calculated action leaves the plaintiff with only one course of action: that is, litigation." See *Horgan*, 123 Nev. at 585 (quoting *Rorvig v. Douglas*, 123 Wash. 2d 854, 862, 873 P.2d 492 [1994]) (reversing 85-year-old precedent disallowing attorney fees as special damages in slander of title cases, adopting Restatement position, reasoning that where "defendants actually know their conduct forces the plaintiff to litigate," and "actual damages are difficult to establish and often times are minimal" then "[f]airness requires the plaintiff to have some recourse against the intentional malicious acts of the defendant").

Of course, authority in jurisdictions outside of Kansas is not unanimous. 53 C.J.S. Libel and Slander; Injurious Falsehood § 323 (noting split in authority). Some courts squarely facing the question have applied the American Rule and declined to recognize attorney fees as among the special damages recoverable for slander of title absent legislation to the contrary. See *Latson v. Boaz*, 278 Ga. 113, 115 n.3, 598 S.E.2d 485 (2004) ("In addition, plaintiffs sought punitive damages and costs of litigation; however, costs of litigation and attorney fees do not constitute the special damages necessary to

12

support an action for slander of title."); *Montgomery Props. Corp. v. Econ. Forms Corp.*, 305 N.W.2d 470, 478-79 (Iowa 1981) (addressing identical question as matter of first impression, noting that, "Ordinarily a successful party cannot recover attorney fees in Iowa in absence of a special statute, contract, or third-party action. . . . We find no good cause to depart from our standing rule that forecloses an award of attorney fees to plaintiff in this tort action."); *Clark v. Lewis*, 684 S.W.2d 161, 164 (Tex. App. 1984) (attorney fees may not be considered actual damage because they are not recoverable in a slander of title action; plaintiff's only damages are special damages in the form of pecuniary losses).

We find these latter cases more persuasive. A broad, general recognition that attorney fees can be pleaded as special damages for the claim asserted in the instant litigation threatens to quickly swallow the American Rule whole. This is because *any* party that has to bring litigation to enforce a legal or equitable right and prevails in that case will have sustained, as part of their "damages," the costs of hiring an attorney and pursuing litigation. Thus, a party cannot point to the attorney fees it is incurring in the instant litigation against a tortfeasor as its harm for the underlying claim being asserted against that tortfeasor.

Therefore, we hold that although special pecuniary damages are a required element for a successful slander of title claim that must be pleaded with particularity under K.S.A. 60-209(g), attorney fees incurred within the litigation itself do not constitute special damages available for slander of title in Kansas, and we abrogate prior caselaw suggesting otherwise. We reach this conclusion mindful that our equitable powers do not extend to award attorney fees that are not authorized by statute or contract—or, as discussed below, which are the result of litigation with a third party caused by defendant's tortious conduct. See *Idbeis*, 285 Kan. at 488 (statute or contract); *Hawkinson v. Bennett*, 265 Kan. 564, 575, 962 P.2d 445 (1998) (third party). We defer to

13

the Legislature to enact, if it deems prudent or desirable, a statutory mechanism for recognizing attorney fees among the special damages that might be particularly pleaded in support of a claim for slander of title.

As noted, plaintiffs' request for relief in the Amended Petition did not identify *any* special damages, contrary to K.S.A. 60-209(g)'s requirement. And, based on our clarification of the elements for a slander of title action, such an identification is required in all such claims. But we need not address the validity of plaintiffs' slander of title judgment because Timsah's petition for review only challenges the district court's award of attorney fees, not the judgment itself. See *State v. Johnson*, 297 Kan. 210, 228, 301 P.3d 287 (2013) (declining "to address the merits of the unpresented argument").

Having concluded that attorney fees within an instant case do not qualify as special damages for purposes of slander of title, we finally turn to the authorities that comprise the bulk of the parties' arguments. As discussed below, these authorities evince a narrow, common law-based exception to the American Rule based on the recovery of attorney fees and litigation expenses for prior litigation with a third party that is a result of a tortfeasor's tortious conduct. That exception, which we could perhaps characterize as a "special damage" in a case against the tortfeasor, does not apply here, as we will see.

3. *The plaintiffs' reliance on precedent recognizing a limited "third-party litigation exception" to the American Rule is misplaced.*

The plaintiffs claim that this court "established" the district court's authority to award attorney fees more than a century ago, in *Campbell v. Cubbon*. They also cite a constellation of out-of-state authorities, along with the Restatement (Second) of Torts, in support of the district court's award. But ultimately, we find these authorities distinguishable or unpersuasive.

14

Some Kansas precedent has recognized an "exception" to the American Rule in circumstances "'where the plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant.'" *Hawkinson*, 265 Kan. at 575 (quoting *Duggan v. Rooney*, 749 F. Supp. 234, 241 [D. Kan. 1990]). The rationale for this third-party litigation exception is that a prevailing plaintiff should be made whole for fees and expenses incurred related to litigation with a third party (separate from the claim against the tortfeasor or wrongdoer) that were incurred as a direct result of the defendant-tortfeasor's conduct. *Harder v. Foster*, 54 Kan. App. 2d 444, 463-74, 401 P.3d 1032 (2017) (*Harder I*) (providing an extensive overview of treatises and out-of-state caselaw discussing the third-party exception; adopting a four-part factor test to determine if the third-party exception applied). In such a situation, the fees are properly viewed as a separate measure of compensatory damages collaterally related to the tortious act. *Harder I,* 54 Kan. App. 2d at 463.

Our courts have at least tacitly—if intermittently—accepted this principle for almost 140 years. See *D.M. Osborne & Co. v. Ehrhard*, 37 Kan. 413, 415-17, 15 P. 590 (1887) (holding no error in jury's award, as part of plaintiff's damages in later suit against seller, the expense plaintiff incurred in seeking legal advice when a suit was brought against him by a third-party purchaser of a note that defendant had—allegedly wrongfully—conveyed to the purchaser). See also *McOsker v. Federal Insurance Co.,* 115 Kan. 626, 224 P. 53 (1924) (attorney fees incurred by insurance purchaser plaintiffs in defending actions brought against them by a third party on notes for insurance premium were recoverable against the insurance company in a subsequent action); *Bank v. Williams*, 62 Kan. 431, 434-35, 63 P. 744 (1901) (affirming inclusion of attorney fees and expenses that bank had incurred in defending a claim brought by an innocent third-party purchaser as a result of a tortfeasor's fraud fees as part of compensatory damage award in bank's later action against tortfeasor for fraud). Cf. *Drumm v. Cessnum*, 61 Kan.

467, 473, 59 P. 1078 (1900) (fees incurred in defense of criminal action recoverable as damages in later malicious prosecution action); *Cubbon*, 98 Kan. at 643-45 (upholding judgment for plaintiff in damages claim against defendant for having procured from plaintiff a fraudulent deed purporting to convey property to defendant, where plaintiff's damages included the attorney fees and expenses plaintiff incurred in a prior fraud action against defendant and other third party tortfeasors to set aside the deed and quiet title; declining to treat prior case as res judicata as to damages, holding that plaintiff's claim for damages didn't accrue until he had cleared title, no improper splitting of claims); *Bank v. Robbins*, 71 Kan. 748, 751-52, 81 P. 487 (1905) (affirming that plaintiff, who had been sued for the entire amount of a check upon which defendant had allegedly forged an indorsement, and who had notified defendant and requested the defendant assume and take charge of the defense of the case but who refused, was entitled to recoup his attorney fees and expenses in that case in his later case against defendant); *Vaught*, 104 Kan. 174, Syl. ¶ 5 (where defendants had wrongfully recorded an ineffective mortgage—apparently to force plaintiff to pay them a commission—and plaintiff's effort to sell the property was thwarted by the cloud on the title resulting in plaintiff having to defend suit by the would-be purchaser, defendants were liable "for all damages capable of definite ascertainment and definite proof" which included lost profits and attorney fees incurred in plaintiff's defense of the prior suit).

But our courts have not universally accepted this principle. See *Nicholson*, 112 Kan. at 126 (in action for specific performance on land contract where the court in its discretion refused enforcement because defendant signed it under a mistake as to its contents, damages for plaintiff may include compensation for commission paid to the broker who negotiated the transaction, and for the nonuse of the land owing to the controversy, but cannot include award for attorney fees for prosecuting the action, vacating award of attorney fees holding that, "[i]nasmuch as in the absence of a statute, a judgment for the plaintiff cannot include his attorney's fee for services in the action in

which it is obtained, even where fraud is the basis of the recovery"); *Evans v. Central Life Insurance Co.*, 87 Kan. 641, 646, 125 P. 86 (1912) (holding Kansas has "never" upheld an award of attorney fees in context where fees arise from the action itself, even in cases of fraud); *Rexroad v. Kansas Power & Light Co.*, 192 Kan. 343, 352, 388 P.2d 832 (1964) (limiting subrogation award to contractor, in its negligence action against gas company related to a fire that destroyed the contractor's property and property of a homeowner, to the amount of judgment and costs and denying recovery of attorney fees contractor incurred in defending the homeowner's prior action).

As noted, plaintiffs emphasize this court's decision in *Campbell v. Cubbon* and the Court of Appeals' interpretation of it in *Reese v. Brame*, both of which the district court relied on as authority for its award. But these cases cannot carry the day for plaintiffs. In *Reese*, No. 67,131, the Kansas Court of Appeals concluded that our decision in *Cubbon* had created an exception to the general rule against awarding attorney fees when a quiet title action involved wrongdoing by those clouding title. See *Timsah,* 2025 WL 444125, at *10. But this holding misreads *Cubbon*, which, as noted above, involved prior litigation against the tortfeasor and other third parties. *Cubbon* thus falls squarely within the third-party litigation exception. Perhaps more importantly, *Cubbon* said nothing about the validity of an award of attorney fees in a slander of title case; it simply listed such fees—apparently related to the prior suit to clear the title—among the damages sought. *Cubbon*, 98 Kan. at 643.

We discussed the "third-party litigation exception" more recently in *Hawkinson*, 265 Kan. at 575, which the plaintiffs' counsel cited at oral arguments—for the first time—as the best authority supporting their position. In *Hawkinson*, we held that the district court did not err in awarding to plaintiff-franchisee, in his later suit against the operators of a master franchise for tortious interference with his Sales Franchise Agreement with the company, the amount of attorney fees and expenses plaintiff had

17

previously incurred in an arbitration with the company. But *Hawkinson* cannot support the district court's award here.

The *Hawkinson* court quoted extensively from a federal district court case, *Duggan v. Rooney*, in which the federal district court described Kansas' adoption of the third-party litigation exception. As set forth in *Hawkinson*, the *Duggan* court stated:

> "'The general rule regarding recovery of attorneys' fees is that "in the absence of any contractual or statutory liability therefor, counsel fees and related expenses are not recoverable as an element of damages." *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277, 1285 (10th Cir. 1969); *Farmers Cas. Co. v. Green,* 390 F.2d 188, 192 (10th Cir. 1968) ("under Kansas law and traditionally, attorneys' fees can be awarded only if provided for by contract or authorized by statute").

> "However, an exception to this rule has been recognized in Kansas where the plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant. The recognized exception is stated as follows:

>> "'If one's property is taken, injured or put in jeopardy by another's neglect of duty imposed by contract, or by his wrongful act, any necessary expense incurred for its recovery, repair or protection is an element of the injury. It is often the legal duty of the injured party to incur such expense to prevent or limit the damages; and if it is judicious and made in good faith, it is recoverable, though abortive.'" *Hawkinson*, 265 Kan. at 575 (quoting *Duggan*, 749 F. Supp. at 241).

We pause here to disavow the final embedded quotation from *Duggan* as the "recognized exception" because it overstates the rule actually recognized in Kansas. The *McOsker* citation has its Kansas roots in *Williams*, but the quote itself is from the Second Edition of Sutherland on Damages, a historical legal text authored by Jabez Gridley Sutherland in 1883. See *Williams*, 62 Kan. 431 (quoting Suth. Dam. [2d ed.] § 58). The Sutherland quote is more expansive than the exception recognized in *Williams,* and stated

in *Hawkinson*, that Kansas has affirmed awards of fees and expenses "where the plaintiff has been *forced* to litigate against a third party because of some tortious conduct of the defendant." (Emphasis added.) *Hawkinson*, 265 Kan. at 575.

Our checkered application of this "exception" may raise a question about its ongoing validity in light of our steadfast adherence to the American Rule in all other contexts. But such a question is not before us today. Plaintiffs' lawsuit against Timsah involves neither prior litigation nor a third party. The "exception" described in the many cases plaintiffs rely on simply does not apply.

We emphasize the narrowness of our decision: there is no authority in Kansas for the district court's award of attorney fees as damages in this case. We affirm the general rule in Kansas that courts do not award attorney fees absent statutory or contractual authority—or third-party litigation. As none of those circumstances are present here, we reverse the district court's award of $33,165, and we reverse that portion of the Court of Appeals decision affirming the district court's award.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

LUCKERT, J., not participating.

\* \* \*

WALL, J., concurring in part and dissenting in part: I agree with the majority that under the American Rule, a party cannot recover the legal costs of prosecuting a slander-of-title claim. But there is a distinction between fees required to clear or quiet the slandered title and fees required to prosecute the slander action itself. And the distinction

is legally significant. Kansas law views the former as lawful damages. And the American Rule applies only to the latter.

Let's start with the rule itself. The American Rule provides that each litigant pays his or her own attorney fees incurred to prosecute the action, "win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010). And parties cannot circumvent this rule by simply relabeling a request for attorney fees incurred in the *instant* litigation as damages. See *Ablah v. Eyman*, 188 Kan. 665, 682, 365 P.2d 181 (1961) ("The general rule is that attorney fees and expenses of litigation, other than ordinary court costs, are not recoverable as an item of compensatory damage in the same or subsequent action and are not chargeable as costs against the defeated party, in the absence of a clear and specific statute authorizing such recovery.").

But this rule does not alter or modify Kansas law on damages. For certain torts, attorney fees are properly characterized as lawful compensatory damages. And the American Rule does not apply to those damages.

Kansas law permits injured plaintiffs to recover what we call compensatory or actual damages—the actual losses caused by a defendant's tortious conduct. *Wright v. Bachmurski*, 29 Kan. App. 2d 595, 606, 29 P.3d 979 (2001) ("Compensatory damages are designed to compensate the tort victim for actual damage or loss incurred by the action of the tortfeasor."). It does so "to make good or to replace loss caused by a wrong or injury." *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 401, 507 P.2d 189 (1973). Compensatory damages restore plaintiffs to the position they were in before the injury. *Burnette v. Eubanks*, 308 Kan. 838, 857, 425 P.3d 343 (2018). And injured parties are "entitled to recover such damages as are the natural, direct, and proximate result of the breach." *McGrew v. Investment Co.*, 106 Kan. 348, 351, 187 P. 887 (1920). These

damages can include a wide array of economic losses like repair costs, diminished property values, and other expenses plaintiffs incurred to mitigate or rectify their injury. See *Webber v. Patton*, 221 Kan. 79, 81, 558 P.2d 130 (1976).

For certain torts, a defendant's wrongful action causes a unique harm—litigation or legal expense. In those cases, the plaintiff's legal fees are distinct from the costs of prosecuting the tort claim itself. They are lawful compensatory damages. See *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1034, 141 Cal. Rptr. 3d 109 (2012) ("An award of fees *as damages* is distinguishable from an award of fees *as fees . . . .*"); see also *Evenson v. Lilley*, 295 Kan. 43, 46, 282 P.3d 610 (2012) ("The purpose of awarding damages to an injured party is to make that party whole by restoring the party to his or her position before the injury.").

Take for example malicious prosecution. This tort arises when one party maliciously sues another party without probable cause, compelling the second party to defend against the lawsuit. *Nelson v. Miller*, 227 Kan. 271, 276, 607 P.2d 438 (1980). If the second party wins, he or she can then bring a malicious prosecution claim. And Kansas law allows him or her to recover the legal fees from the prior lawsuit as compensatory damages. 227 Kan. at 282. The American Rule does not bar this recovery.

Slander-of-title claims share important similarities to malicious prosecution. In both cases, "[i]t is the defendant who by intentional and calculated action leaves the plaintiff with only one course of action: that is, litigation." *Rorvig v. Douglas*, 123 Wash. 2d 854, 862, 873 P.2d 492 (1994). "[T]he defendants actually know their conduct forces the plaintiff to litigate" or incur legal expense to address the injury. 123 Wash. 2d at 862. "[A]ctual damages are difficult to establish" and are often minimal apart from the legal expenses. 123 Wash. 2d at 862. And in both cases, "[f]airness requires the plaintiff to

have some recourse against the intentional malicious acts of the defendant." 123 Wash. 2d at 862.

In this respect, the legal fees plaintiffs incur to remove or quiet the malicious cloud on title is akin to the medical expenses plaintiffs incur in a personal-injury claim. "'When a pedestrian is struck by a car, he goes to a physician for treatment of his injuries, and the motorist, if liable in tort, must pay the pedestrian's medical fees.'" *Brandt v. Superior Court*, 37 Cal. 3d 813, 817, 210 Cal. Rptr. 211, 693 P.2d 796 (1985); see *Shirley v. Smith*, 261 Kan. 685, 693, 933 P.2d 651 (1997) (economic damages include the cost of medical care, past and future). Likewise, when a defendant intentionally and maliciously clouds the plaintiff's title, the plaintiff seeks the services of an attorney to clear the slander, and the defendant must pay the legal costs necessary to quiet title. "Attorney fees incurred in removing the cloud from the title and restoring vendibility are necessary expenses of counteracting the effects of the slander." *Rorvig*, 123 Wash. 2d at 863.

In short, Kansas law requires that plaintiffs be awarded damages in an amount that restores them to their position before injury. And when a defendant is liable for slandering title, the legal fees that a plaintiff expends to clear that title are the natural, direct, and proximate result of a defendant's malicious conduct. Plaintiffs would not have incurred those fees but for the defendant's malicious conduct. And it is reasonably foreseeable that the defendant's malicious conduct will force plaintiffs to incur this expense. 123 Wash. 2d at 862. Classifying these fees as damages puts plaintiffs in their pre-injury position.

Thus, in slander-of-title claims, such attorney fees are properly classified as compensatory damages. And the American Rule simply doesn't apply. See *Bank v. Williams*, 62 Kan. 431, 63 P. 744 (1901) (bank that sued the writer of bad check for fraud was entitled to recover as damages attorney fees the bank expended to minimize its

injuries and liability to others; incurring these fees was both necessary and arose solely as a result of defendant's malicious conduct).

The majority expresses some reservations with this approach. First, it explains that the third-party litigation rule described in *Hawkinson v. Bennett*, 265 Kan. 564, 962 P.2d 445 (1998), doesn't apply here because there was no prior third-party litigation. *Savage v. Timsah*, 322 Kan. ___, slip op. at 19-20. But that doesn't mean the American Rule *should* apply. *Hawkinson* shares two important characteristics with the rule proposed here. First, like *Hawkinson*, the proposed rule for slander-of-title claims does not compensate attorneys for the costs of prosecuting the slander claim itself—the fees incurred in the process of recovering actual damages. See *Brandt*, 37 Cal. 3d at 817. Second, like *Hawkinson*, the rule simply acknowledges that certain attorney fees are a proper measure of "'damages wrongfully caused by defendant's improper actions.'" 37 Cal. 3d at 817. And the American Rule does not apply to those compensatory damages.

The majority also fears that treating these legal expenses as damages will "swallow the American Rule whole." 322 Kan. ___, slip op. at 14. This simply isn't the case. If defendant is liable for slandering title, then plaintiffs may recover as special damages only those attorney fees and expenses incurred to remove the cloud on the title. *Horgan v. Felton*, 123 Nev. 577, 583-84, 170 P.3d 982 (2007). The American Rule still prohibits the recovery of attorney fees that the plaintiff incurred during the process of recovering actual damages. See 123 Nev. at 583.

Granted, when a party joins a quiet-title action and a slander-of-title action, it may complicate the process of differentiating what legal work was done to clear the slandered title and what legal work was done in the process of recovering actual damages. But this is not unfamiliar territory for our district courts. For example, plaintiffs occasionally prevail both on contract/statutory theories with a fee-shift provision and tort theories

23

without such a provision. And district courts have capably differentiated between those fees that fall within and outside the fee-shift provision. So it's no surprise that when a quiet-title claim is joined in the same action as a slander-of-title claim, other state courts have capably differentiated fees incurred to clear slandered title from those incurred in the process of recovering actual damages. See, e.g., *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 611 P.2d 1119 (Ct. App. 1980) (plaintiff entitled to attorney fees incurred to clear title in action that joined quiet-title and slander-of-title claims); *Gillmor v. Cummings*, 904 P.2d 703, 708-09 (Utah Ct. App. 1995) (same); *Rorvig*, 123 Wash. 2d at 863 (same).

Thus, I would hold that plaintiffs are entitled to recover as damages only those attorney fees and legal expenses that they incurred to clear the slandered title. But the American Rule prevents plaintiffs from recovering fees expended to prosecute the slander-of-title claim—the legal expense of recovering actual damages. The record does not confirm whether the district court's judgment is consistent with this rule. Thus, I would reverse the damages award and remand for the district court to consider only those legal fees properly characterized as damages—those tied to clearing the slandered title—in determining plaintiffs' damage award.

STEGALL, J., joins the foregoing opinion concurring in part and dissenting in part.